**In the Matter of Albert Richard BERNDT and Parie Rosezella Berndt, Debtors.**

**No. 81–10179.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Nov. 1, 1983.

Ward W. Miller, Fort Wayne, Ind., for himself as trustee.

C. David Peebles, Fort Wayne, Ind., for debtors.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

In this voluntary Chapter 7 proceeding filed on March 12, 1981, by debtors Albert

Richard Berndt and Parie Rosezella Berndt, the trustee filed an Application for Turnover seeking a court order requiring debtors to turn over to the trustee both documentation of and present benefits in an employee savings and profit sharing program. The debtors opposed turnover by asserting that the funds are not property of the estate as defined by section 541 of the Bankruptcy Code. A hearing on the objection to trustee's application for turnover was held, and the court took the matter under advisement on February 5, 1982.

The issue is whether the bankruptcy estate includes debtors' right to withdraw certain proceeds from an employee savings and profit sharing program which is part of an Employee Retirement Income Security Act (ERISA) qualified plan.

The debtor participated in the Savings and Profit Sharing Fund of Sears Employes [Fund] established by Sears, Roebuck and Co. for the benefit of its employees. The Fund Plan contains the standard anti-alienation, anti-assignment clause (section 7.8 of the Plan) required by ERISA, 29 U.S.C. § 1056(d) (1976), and the Internal Revenue Code, 26 U.S.C. § 401(a) (1976), in order to qualify the Fund as tax exempt. In general, the distribution of employer's and employee's contributions into the Fund usually begins upon the retirement, disability, termination, or death of the participant (see section 7 of Fund Plan). However, the participant may elect to withdraw some or all of the deposits made by him (i.e., his unrestricted interest) by giving prior written notice (see sections 3.5 and 3.6 of Fund Plan).

The debtor alleges that the anti-alienation provision creates a spendthrift trust which is valid in Indiana and which is specifically excluded from the estate property under section 541(c)(2) of the Bankruptcy Code. The trustee contends that the debtor's right to withdraw his own contributions and accretions with no disability is an asset of the estate and must be turned over to the trustee.

Section 541 of the Bankruptcy Code determines what constitutes estate property:

Section 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The Code, however, neither defines "property" nor "interest in property." Courts therefore turn to nonbankruptcy law for the needed definitions, and then to bankruptcy law to determine whether that interest passes to the bankruptcy trustee as property of the bankruptcy estate.

Although the debtor's interest in property will be initially determined by nonbankruptcy law, the question of what constitutes property within the meaning of § 541 is a federal question, and under § 541 every debtor's interest in property becomes part of the estate. *Matter of Ross,* 18 B.R. 364, 367 (N.D.N.Y.1982).

The Indiana Statutes specifically provide that an interest in an employee benefit plan is property:

"Property" means tangible or intangible property, regardless of its location, that is either real or personal. The term includes:

(1) The right to receive proceeds under a life insurance policy or annuity; and

(2) An interest in an employee benefit plan.

"Interest" means a present or future interest that is either equitable or legal. The term includes a power in trust and a power to consume, appoint, or apply an interest for any purpose.

Ind.Code Ann. § 32–3–2–1 (Burns Supp. 1983). The debtor had such an interest because of his participation in the Sears plan for its employees.

Both the legislative history and court decisions reflect congressional intent that the

scope of § 541(a)(1) be very broad. *U.S. v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515, 10 B.C.D. 705, 709 (1983). It includes tangible and intangible property and all types of interests in property. Even property needed for a "fresh start" now first comes into the estate and then may be exempted by the debtor.

The question, then, is whether the debtors had an interest in the Savings and Profit Sharing Plan at the time of the filing of the petition. Without a doubt they did. The debtor Albert Berndt, as a Sears employee, chose to participate in the Fund (Plan, § 2.1) and made contributions to it (Plan, § 3.2). Those deposits made by him were under his control and could be withdrawn by him without penalty by written notice (Plan, §§ 3.5, 3.6). Evidence indicated that debtor's net deposits balance was $1,780.31; that he could have withdrawn all or a portion of that amount on the date of filing his petition; and that he did withdraw $355.52 on August 3, 1981, almost five months after filing his petition. The savings "portion" of the Savings and Profit Sharing Fund in this instance was essentially a type of savings account with special tax benefits granted in order to encourage citizens to save for retirement (Plan, § 1.1). The debtor had both control of and access to his own deposits into the Fund, and therefore had an interest in the funds as required under Section 541(a). In contrast, the pension "portion" of the Fund was not under the debtor's control. He could withdraw or receive distribution of those contributions only on retirement, disability, termination of employment, or death. Pension plans of this type have often been found not to be the property of the estate.[1] *In re Rogers,* 24 B.R. 181 (Bkrtcy.D.Ariz.1982); *Matter of Turpin,* 644 F.2d 472 (5th Cir. 1981).

■ This court has held that future benefits are not property of the estate under section 541 because the debtor has no present right to withdraw those benefits and no legal right to demand them at the present time in a court of law. (See unpublished cases concerning future wages: *Matter of Haynes,* 9 B.R. 418 (Bkrtcy.N.D.Ind. 1981); *Matter of Harter,* 10 B.R. 272 (Bkrtcy.N.D.Ind.1981).) In contrast, however, this court has found that IRA funds inure to the estate because of the debtor's present control and access. (See *Matter of Schwartz,* No. 80–10843 (Bkrtcy.N.D.Ind. 1982) (unpublished). See also *In re Macy,* 4 B.C.D. 94 (Bkrtcy.D.Or.1978); *In re Mendenhall,* 4 B.R. 127 (Bkrtcy.D.Or.1980).) For the same reasons, the court now finds that, because the debtor had a present right to withdraw his contributions, the savings portion of the Sears Fund is property of the bankruptcy estate and may pass to the Trustee.

The debtor has claimed, however, that the funds are not property of the estate because they fall within the § 541(c)(2) "spendthrift trust" exception.

Section 541(c)(2) states that an interest of the debtor is not property of the estate if

[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The legislative history indicates that this section is intended to preserve restrictions on transfer of a spendthrift trust. In the provision the Code explicitly relies on nonbankruptcy law. Indiana case law has long upheld the validity of the spendthrift trust. *Locke v. Barbour,* 62 Ind. 577 (1878). The debtor argues that this ERISA qualified fund is such a spendthrift trust because it was

created ... to protect the income, rent and profits of the trust estate from the creditors of the beneficiaries of the trust, although the beneficial use and enjoyment of such income, rents, and profits are expressly granted to the beneficiaries. 28 I.L.E. *Trusts,* § 102 at 573 (1960).

---

1. However, some courts, basing their interpretation of § 541(c)(2) on its relationship with § 522(d)(10)(E), have held that pension funds were not intended to be excluded from the debtor's estate. See *Regan v. Ross,* 691 F.2d 81, 86 (2d Cir.1982).

518

However, courts usually find that Section 541(c)(2) applies only to traditional spendthrift trusts, and that an ERISA fund is not such a trust. *Matter of Strasma,* 26 B.R. 449, 450 (Bkrtcy.W.D.Wis.1983). In a valid spendthrift trust, the settlor cannot also be the beneficiary. *In re Graham,* 24 B.R. 305, 310 (Bkrtcy.N.D.Iowa 1982); Bogert, *Law of Trusts and Trustees,* 2d ed. § 223, pp. 438–439 (1979). Nor can the funds of a spendthrift trust be transferred voluntarily or involuntarily. Bogert, *supra,* § 226, p. 477 (1979). However, in the instant case the debtor deposited his contributions in the Fund for his own use, and he could and did withdraw those funds without restriction. Clearly he was both the settlor and beneficiary.

Debtors argue that the Sears Plan's anti-alienation provision precludes the debtors' funds from passing to the bankruptcy estate. However, courts have recognized that Congress did not intend ERISA's provisions to supersede federal law (*Matter of Baviello,* 12 B.R. 412, 417, (Bkrtcy.E.D.N.Y.1981)). Furthermore, such provisions do not create a spendthrift trust or remove property from the estate. *Matter of Ross,* 18 B.R. 364, 367 (N.D.N.Y.1982). The basis of their decisions is that the debtors' complete right of withdrawal destroyed the spendthrift trust exception provided by § 541(c)(2), despite the inclusion of an anti-alienation clause.[2] *In re DiPiazza,* 29 B.R. 916, 10 B.C.D. 618, 620 (Bkrtcy.N.D.Ill.1983).

Moreover, under the common law of trusts,

> If a settlor creates a trust for his own benefit and inserts a spendthrift clause, it is void as far as then existing or future creditors are concerned, and they can reach his interest under the trust.

Bogert, *supra* at 438–439, cited in *Matter of Witlin,* 640 F.2d 661, 663 (5th Cir.1981). See *Carter v. American Trust Co.,* 82 Ind. App. 587, 589, 147 N.E. 158 (1924).

Debtors refer to *In re Threewitt,* 24 B.R. 927, 9 B.C.D. 1225 (D.Kan.1982) as authority for the proposition that the trustee is not entitled to turnover of the pension/profit sharing funds of the debtor. In that case the United States District Court reversed a Kansas Bankruptcy Court's ruling that a debtor's interest in an ERISA-qualified plan is property of the bankruptcy estate. [*In re Threewitt,* 20 B.R. 434 (Bkrtcy.D. Kan.1982).]

The facts in *Threewitt* are quite similar to those herein. A Chapter 7 debtor had participated in an ERISA-qualified Investment Savings Plan in which employer and employee contributions were accumulated. Employees had a broad right of withdrawal. The trustee sought turnover of the corpus of the Plan.

The Bankruptcy Court held that the debtor's interest in the Plan fell outside the spendthrift trust exception provided by section 541(c)(2) of the Bankruptcy Code. Because his interest in the Plan was largely self-created, and because he could voluntarily withdraw much of his interest in the plan, that court found that the Plan did not fit the description of a traditional spendthrift trust. *In re Threewitt,* 20 B.R. at 438.

The District Court disagreed with the Bankruptcy Court's "unnecessarily narrow construction" of section 541(c)(2). *In re Threewitt,* 24 B.R. at 929, 9 B.C.D. at 1226. A more reasonable interpretation of that section is a broader reference to any trust barring creditors from reaching a beneficiary's interest.

> Under the plain and simple language of section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee.

*Idem.* In holding that the debtor's property was not property of the bankruptcy es-

---

**2.** One recent bankruptcy decision that excluded ERISA funds from the bankruptcy estate made clear that, because the debtor had no control over his funds, the court's determination was "readily distinguishable from both *In re Wat-* son, 13 B.R. 391 [7 BCD 1381] (Bkrtcy.M.D.Fla. 1981) and *Matter of Baviello,* 12 B.R. 412 (Bkrtcy.E.D.N.Y.1981)...." *In re Holt,* 32 B.R. 767, 10 B.C.D. 1267, 1271 n. 11 (Bkrtcy.D. Tenn.1983).

tate, the District Court's reasons were threefold:

1. that Congress did not explicitly use the term "spendthrift trust" in its legislation;

2. that under nonbankruptcy law a debtor's interest in a qualified ERISA plan is beyond the reach of creditors; and

3. that the section 522(d)(10)(E) exemption [3] (for ERISA and other retirement or support plans beyond the reach of creditors) was actually an overlap with section 541(c)(2) rather than an indication that ERISA funds were intended as part of the bankruptcy estate which then could be available for the 522(d)(10)(E) exemption.

In a recent decision an Illinois bankruptcy court considered the District Court's analysis in *Threewitt* and found it not to be persuasive. *In re DiPiazza*, 29 B.R. 916, 10 B.C.D. 618, 621 (Bkrtcy.N.D.Ill.1983). Once again the facts concerned a chapter 7 debtor with present withdrawal rights in an ERISA-qualified pension and profit sharing plan. The Illinois bankruptcy court, describing the District Court's interpretation of § 541(c)(2) as "overly broad," stated that Congress's legislative history behind section 541(c)(2) explicitly referred to the exception of only spendthrift trusts. *Id.* at 619, 621. (See H.R.Rep. No. 595, 95th Cong., 2d Sess. 396, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6325; 4 *Collier on Bankruptcy,* ¶ 541.23 (15th ed. 1983).) Furthermore, the District Court did not distinguish between a trustee's turnover order and a creditor's garnishment action.

The Supreme Court of the United States in *Kokoszka v. Belford,* 417 U.S. 642, 651 [94 S.Ct. 2431, 2436, 41 L.Ed.2d 374] (1974), explicitly stated that a trustee's right to seek turnover of a debtor's property is distinguishable from a creditor's garnishment proceeding. *In re DiPiazza* at 619.

The *DiPiazza* court recognized the breadth of the § 541(a)(1) definition of property, and found that ERISA plans, not spendthrift trusts under Illinois law, are therefore not excludable from that definition by means of § 541(c)(2). The court then reached its decision that the debtor's interest was part of the bankruptcy estate by weighing the extent of dominion and control the debtor had over the corpus of the ERISA plan. The bankruptcy court compared the debtor's right of withdrawal over the corpus with similar rights found in KEOGH plans, and then concluded that, as has been held for KEOGH plan participants, that right of withdrawal destroyed the spendthrift trust exception provided by section 541(c)(2). *In re DiPiazza, supra* at 620.

This court is substantially in agreement with the Illinois Bankruptcy Court's analysis. In addition to following that court's approach, however, this court also examined the source of the protection from creditors mandated by ERISA. That requirement of the inclusion of such a provision in qualified ERISA plans is found at 29 U.S.C. § 1056(d)(1):

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

The ERISA definition of "pension plan" is given in 29 U.S.C. § 1002:

> (2) The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

---

**3.** 11 U.S.C.A. § 522(d) The following property may be exempted under subsection (b)(1) of this section:

.    .    .    .    .

(10) The debtor's right to receive—

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

The pension plan's benefits that may not be assigned or alienated, therefore, are retirement benefits or deferred income.

Courts have commented on the intent of Congress in enacting ERISA and proscribing alienation and assignment:

It is clear that ERISA sought to protect *retirement* benefits of employees and that there is no right supplied by the statute for immediate payment of any preretirement benefits upon withdrawal from the plan.

*Watts v. Wikoff Color Corp. of S.C.,* 543 F.Supp. 493, 496 (D.C.Tex.1981), aff'd 683 F.2d 416 (5th Cir.1982).

"Absent clarification by the Supreme Court or by Congress, this court is persuaded that the intent of Congress in enacting ERISA was to protect the employees and their families from bargaining away the benefits provided by employee benefit plans qualified under ERISA...."

*Senco of Florida, Inc., v. Clark,* 473 F.Supp. 902, 908 (D.C.Fla.1979).

The purpose of proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement.

*American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 124 (2d Cir.1979).

Therefore, it is clear that ERISA concerns retirement programs, and intends to protect the benefits due at retirement. In addition, nonbankruptcy law has shown that the clause against alienation and as-

signment was not intended to bar execution of state court judgments concerning child support, alimony, or other money judgments. Thus protection from creditors is not absolute.

Many courts have found that pension plans are property of the bankruptcy estate, despite the ERISA requirement. They frequently comment that the restrictions on alienation and assignment are required for qualification of the trust for tax exemptions, not bankruptcy exemptions. See *Matter of Kelley,* 31 B.R. 786 (Bkrtcy.N.D. Ohio 1983); *In re Hinshaw,* 23 B.R. 233 (Bkrtcy.D.Kansas 1982). Those plans included in the estate may, however, be entitled to exemption under section 522(d)(10)(E), which remove from the estate benefits that are like future earnings. (See footnote 3, *supra.*) See *In re Hinshaw, supra; In re Clark,* 18 B.R. 824 (Bkrtcy.E.D. Tenn.1982); *Matter of Kochell,* 26 B.R. 86 (Bkrtcy.W.D.Wisc.1982).

Although this court agrees with the *DiPiazza* court's rationale, it does not concur in its decision to turn over all pension plan benefits to the Trustee. There is a note of reluctance in the opinion of the Illinois bankruptcy court:

While realizing that a turnover of the pension plan would cause a forfeiture of the debtor's deferred retirement benefits and that the forfeiture evidences a lack of dominance and control on behalf of the debtor, this court nevertheless finds that the weight of the evidence indicates that the pension plan in question is not a traditional spendthrift trust as contemplated by Congress under Section 541(c)(2). Consequently, this court finds that the pension plan is property of the debtor's estate pursuant to Section 541(a)(1). *In re DiPiazza, supra* at 621.

This court believes that the equitable solution comes from a recognition of the fact that a qualified ERISA plan may serve more than one purpose. In the instant plan of the debtor Berndt, the Savings and Profit Sharing Fund of Sears Employes, the retirement fund portion is only one aspect

of the Plan. The Fund was established for the following purposes:

(a) to permit eligible employes of the employers to share in the profits of, and to acquire a proprietary interest in, the Company; and

(b) to encourage the habit of saving; and

(c) to provide a plan through which each eligible employe may accumulate his own savings, his portion of the Employers' Contribution and the earnings on his accumulations as a means of providing additional income for himself at the close of his active business years.

(Fund Plan § 1.1)

Although the anti-alienation clause required under an ERISA plan may bar creditors from retirement benefits, it should not operate to bar creditors from the present benefits included in a plan but not part of the retirement plan.

Accordingly, debtors' objection to Trustee's application for turnover is denied. Debtors are ordered to turn over to the Trustee documentation of and all present benefits in the Sears employee stock purchase program as of March 12, 1981.

SO ORDERED.