In the Matter of Alvin Lloyd **COOK** and Elizabeth Ann Cook, Debtors.

Ward W. **MILLER,** Trustee, Plaintiff,

v.

**LINCOLN NATIONAL BANK AND TRUST COMPANY,** Trustee under the North Manchester Foundry Employees' Savings & Profit Sharing Plan, Defendant.

Civ. No. F 84–114.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 19, 1984.

Ward W. Miller, Fort Wayne, Ind., for plaintiff.

George N. Bewley, Jr., Fort Wayne, Ind., for defendant.

## ORDER

LEE, District Judge.

This matter is before the court on appeal from the bankruptcy court's order of March 1, 1984, denying the Trustee's request for turnover to the bankruptcy estate of the retirement benefits contributed by debtor Alvin Lloyd Cook to his employer's benefit plan. The issue on appeal is whether the bankruptcy court erred in holding that the debtor's contributions to his employer's plan were not property of his bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). For the following reasons, this court will reverse the bankruptcy court's order of March 1, 1984.

### Discussion

 This adversary proceeding came before the bankruptcy court for decision on stipulated facts. The debtor Alvin Lloyd Cook was a participant in his employer's savings and profit sharing plan when debtor filed his petition in bankruptcy on August 3, 1982.[1] The plan consists of contributions by both employer and employee. Under the terms of the plan, debtor was required to contribute a fixed percentage of his salary to the plan. Those required

---

1. The operative date for determining what property the bankruptcy estate contains and the trustee controls to effect resolution of bankruptcy is the date of filing. The trustee has duties under the Code only with respect to property of the estate as defined in 11 U.S.C. § 541. 11 U.S.C. § 704. Commencement of a case, which creates an estate under § 541(a), is defined as the filing with the bankruptcy court of a bankruptcy petition. 11 U.S.C. §§ 301, 302, 303. The Trustee does not dispute that his right to property for this bankruptcy estate is created by the filing of bankruptcy and determined as of the date of debtors' filing. As required by the Code, the court will evaluate debtors' interest in this plan as of the date of debtors' filing of bankruptcy.

contributions were made with after tax dollars. Debtor had the option to make additional voluntary contributions, but had not so done. As of December 31, 1981, debtor's employee fund portion, his required contributions, equaled the sum of $5,085.39. Debtor could not resign or withdraw from participation so long as he was an employee once he elected to participate in the employer's plan. Withdrawals from the plan by its participants occur when the participant's employment is terminated, the participant attains age sixty, the participant dies prior to reaching age sixty, or the participant requests distribution based on hardship or dire need. Under the plan, hardship or dire need includes illness or death in the participant's family, education of the participant's children, or purchase of a residence. The plan has an anti-alienation clause which forbids participants from transferring their interest to another and forbids creditors of participants or beneficiaries from reaching the assets of the plan. The plan qualifies for tax benefits under the Internal Revenue Code and the Employee Retirement Income Security Act (ERISA). The Trustee seeks turnover only of that portion of the plan which was contributed by the debtor with after tax dollars.

In concluding that the contributions of the debtor to the plan were not property of the bankruptcy estate, the bankruptcy court erroneously relied upon pre-1978 bankruptcy law. Prior to the Bankruptcy Code, passed in 1978, only property which was not exempt passed to the trustee in bankruptcy. Bankruptcy Act § 70(a)(5). The determination of whether, under the Bankruptcy Act, a particular asset was exempt, was based on the nature of the asset, focusing on whether the asset related to the debtor's past or the debtor's future. *E.g., Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). Property was exempt from the bankruptcy estate under the Act if the asset related to the future. *Id.* The Bankruptcy Code of 1978 broadened "what is included in the bankruptcy estate by eliminating Act concepts of leviability, transferability, vested title

and fresh start." *In re DiPiazza,* 29 Bankr. 916, 918 (Bankr.N.D.Ill.1983).

■ Section 541(a)(1) provides that a bankruptcy "estate is comprised of … except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property as of the commencement of the case." [2] Section 541(c)(2) provides that "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Section 541(a)(1) dramatically expanded the scope and reach of the bankruptcy estate. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, ——, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Inclusion of an asset in a bankruptcy estate is no longer determined by reference to the nature of the asset and how the asset relates to the debtor's situation. *See, e.g., Bernstein v. Richardson,* 34 Bankr. 611 (Bankr.D.Col.1983) (accrued, but unpaid, annual leave is property of the bankruptcy estate under § 541(a)(1)).

■ It is clear that Congress intended that the scope of property interests included in the bankruptcy estate under § 541(a)(1) be broad, while the scope of the exclusions from the bankruptcy estate be narrow. Having examined the legislative history of § 541(c)(2) and having examined other courts' considerations of § 541(c)(2), this court concludes that the exclusion contained in § 541(c)(2) should be narrowly drawn. Section 541(c)(2) is an exception designed to apply to spendthrift trusts. *Accord In re Graham,* 726 F.2d 1268 (8th Cir.1984); *Matter of Johnson,* 724 F.2d 1138 (5th Cir.1984); *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *Matter of Berndt,* 34 Bankr. 515 (Bankr.N.D.Ind.1983); *In re DiPiazza,* 29 Bankr. at 921. *See also Warren v. G.M. Scott & Sons,* 34 Bankr. 543 (Bankr.S.D.Ohio 1983).

The controversy arises under § 541(c)(2) when courts confront the issue of whether ERISA-qualified plans which impose re-

---

**2.** Section 541(b) is not applicable or relevant to the facts of this case.

strictions on the transfer of beneficial interests of debtors in a trust fit within the terms of § 541(c)(2). *Compare In re Holt,* 32 Bankr. 767 (Bankr.E.D.Tenn.1983) (541(c)(2) applies to an ERISA-qualified plan) *with Matter of Kelley,* 31 Bankr. 786 (Bankr.N.D.Ohio 1983) (541(c)(2) does not apply to ERISA-qualified plans). The issue of whether an ERISA-qualified plan fits within the terms of the § 541(c)(2) exception is complicated by the fact that there is a federal exemption in the Code which appears to apply more specifically to ERISA-qualified plans. 11 U.S.C. § 522(d)(10)(E). However, Congress granted the states the option of creating their own exemptions and forbidding debtors from utilizing the exemptions set forth in § 522(d) when a particular state opts out. 11 U.S.C. § 522(b)(1). Indiana opted out of the exemptions set forth in § 522(d) in 1980. I.C. 34-2-28-0.5. *See In re Marino,* 27 Bankr. 282 (Bankr.N.D.Ind.1983) (§ 522(d) is not applicable to Indiana debtors).[3]

■ The State of Indiana specifically provides that an interest in an employee benefit plan is property. I.C. 32-3-2-1. *Cf. In re Sheridan,* 38 Bankr. 52 (Bankr. D.Vt.1983) (State of Vermont provides that an interest in a retirement plan is not property). It is clear, then, that an interest in an employee benefit plan would be included in the § 541(a)(1) definition of property. It is up to a particular debtor who is domiciled in the State of Indiana to raise the issue of whether the specific plan involved fits under the exception of § 541(c)(2). For a particular plan to come within the terms of § 541(c)(2), it must be demonstrated that the plan meets the definition of spendthrift trusts as defined by statutory and case law in the State of Indiana. "Congress ... intended by § 541(c)(2) to preserve the status [of] traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act." *Graham,* 726 F.2d at 1271. ERISA-qualified plans can come under the exception of § 541(c)(2), but only if the ERISA-qualified plan can meet the definition of spendthrift trust in that specific state. *Goff,* 706 F.2d at 587. In the determination of whether a particular plan fits within the exception of § 541(c)(2), state law controls, not ERISA. *Id. See Graham,* 726 F.2d at 1272–73; *Johnson,* 724 F.2d at 1139–40; *Warren,* 34 Bankr. at 543. *Cf. Berndt,* 34 Bankr. at 519–20.

This court concludes that the exception of § 541(c)(2) is met only by reference to applicable state nonbankruptcy law because to do otherwise would appear to be contrary to the legislative history and would appear to render meaningless the federal exemption provided under § 522(d)(10)(E). *Compare Kelley,* 31 Bankr. at 788 (held ERISA-qualified plans could not come under the exception of § 541(c)(2) because of § 522(d)(10)(E)) *with Holt,* 32 Bankr. at 772 (held ERISA-qualified plans can come under the exception of § 541(c)(2) because they are enforceable under federal nonbankruptcy law). By crafting a rule which allows debtors the opportunity of excepting their ERISA-qualified plans if they can prove that the plan meets the state definition of a spendthrift trust, the court gives effect to the important public policy behind ERISA-qualified plans as well as giving effect to the important public policy behind the Bankruptcy Code and its concept of property. This construction of § 541(c)(2) appropriately balances important competing interests. Such a construction insures that § 541(c)(2) will remain a limited exception as most state definitions of spendthrift trusts are narrow in scope.

■ The State of Indiana recognizes spendthrift trusts by statute and case law. I.C. 30-4-3-2; *Locke v. Barbour,* 62 Ind. 577 (1878); *Clay v. Hamilton,* 116 Ind. App. 214, 63 N.E.2d 207 (1945); *Carter v. American Trust Co.,* 82 Ind.App. 587, 147 N.E. 158 (1925). *See generally* G. Bogert, *Law of Trusts and Trustees* § 222 (Rev. 2d ed. 1979). The first requirement of a

---

**3.** The constitutionality of allowing a state to opt out has been upheld. *Matter of Sullivan,* 680 F.2d 1131 (7th Cir.1982) (geographic uniformity of exemptions is all that is required); *In re Wright,* 39 Bankr. 623 (D.S.C.1983) (Congress intended to allow variations in exemptions among the states).

spendthrift trust in Indiana is that, in a valid spendthrift trust, the settlor cannot be a beneficiary of the contemplated trust. If the settlor of the contemplated trust is also a beneficiary, creditors may reach the trust corpus. I.C. 30–4–3–2(b). Underlying this requirement is the issue of the extent of dominion and control a beneficiary possesses over the trust corpus. *Berndt*, 34 Bankr. at 519. The second requirement of a valid spendthrift trust in Indiana is that the contemplated trust must contain a clause barring any beneficiary from voluntarily or involuntarily transferring his interest in the trust. I.C. 30–4–3–2(a). This requirement also has as its underlying concern the issue of the extent of dominion and control the beneficiary possesses over the corpus of a trust. Thus, it is clear that for an ERISA-qualified plan to meet the exception of § 541(c)(2), an Indiana debtor must show that the settlor is not a beneficiary of the plan, the plan contains an anti-alienation clause, and the debtor-beneficiary has no present dominion or control over the plan corpus.

■ Turning to an examination of the plan before this court for review, it is clear that there is an anti-alienation clause in the employer's plan. The question of whether the debtor is the settlor or a settlor of this plan is a closer question. However, this court declines to hold that, because an employer requires contributions to be made by its employees in order that the employee can receive employer contributions, such a requirement causes an employee to be considered a settlor of his employer's plan as a matter of law. Such a holding would be against public policy.

It is clear that in ERISA-qualified plans which are set up by employers to assist in aiding its workers to secure a means of support when its workers are no longer able to work, it is the employer who is the settlor of the trust, not the employee. Where an ERISA-qualified plan set up by an employer requires an employee to make contributions to the plan as part of the employee's participation, the employee cannot be considered a settlor as that term is traditionally used in the area of spendthrift trusts. The court specifically limits this holding to contributions of employees which are required by the employer establishing the trust.

■ Determining that in this case, the debtor is not a settlor of his employer's plan does not end the inquiry. The key issue is the extent of dominion and control the debtor possesses over the corpus. This issue effectively translates to one word: access. An examination of the withdrawal provisions of this plan, as stipulated by the parties, reveals that the debtor has present access to his portion of the trust corpus. The plan contains a hardship clause which, in effect, makes debtor's portion of the plan available to the debtor for current use. Hardship under the plan includes a need for funds because of illness or death, a need for funds for the education of children, or a need for funds for the purchase of a family residence. The foregoing hardship examples are not exclusive under the plan. It appears evident in this case, by virtue of the debtor filing bankruptcy, that the debtor was in need of funds due to his need of relief from financial hardship. *Cf. In re Miller*, 33 Bankr. 549, 551 (Bankr.D. Minn.1983) (profit sharing plan not exempted because available for current use). The employer's plan functions more like a savings program than a spendthrift trust. Debtor's right of withdrawal bars debtor from claiming the § 541(c)(2) exception. *See Berndt*, 34 Bankr. at 519; *DiPiazza*, 29 Bankr. at 922. Debtor's interest in his employer's ERISA-qualified plan is property of the debtor's estate pursuant to § 541(a)(1) and must be turned over to the Trustee.

In order for an ERISA-qualified plan to meet the § 541(c)(2) exception, the debtor-beneficiary cannot possess any present access to his interest in the plan at the time bankruptcy is filed. The determination of whether a debtor-beneficiary possesses access to an ERISA-qualified plan that would preclude the debtor's use of the § 541(c)(2) exception must be made on a case by case basis. Although the actual requirements of particular plans may vary from case to case, the court concludes that the prime

requirement a plan· must possess to fit within the ·§ 541(c)(2) exception (assuming, of course, that the plan contains an anti-alienation clause and the settlor is not a beneficiary) is that the participant/beneficiary cannot possess any means, when bankruptcy is filed and the bankruptcy estate is thus created, along with the trustee's powers, by which the participant could gain access to the funds. Such a requirement would appear to include generally the inability to receive any payments from the plan, once a participant, unless one is terminated, retires, becomes disabled, or dies. The foregoing factors are, by no means, exclusive.

Accordingly, on the basis of the foregoing, the court hereby REVERSES the bankruptcy court's order of March 1, 1984 and REMANDS this case to the bankruptcy court for proceedings not inconsistent with this opinion.