In re Thomas A. KERR, Debtor.

In re Gordon M. McCLEAN, Sr., Debtor.

In re Gordon M. McCLEAN, Jr., Debtor.

Bankruptcy Nos. 84C–03028, 84C–01280 and 84C–01279.

United States Bankruptcy Court, D. Utah.

Aug. 1, 1986.

R. Kimball Mosier, Mosier, Straley & Doxey, Salt Lake City, Utah, for Thomas A. Kerr.

Michael A. Katz, Garrett & Sturdy, Salt Lake City, Utah, for Deseret Federal Sav. and Loan Assn.

Carl J. Nemelka, Salt Lake City, Utah, for Gordon M. McClean, Sr. and Gordon M. McClean, Jr.

Roger G. Segal, Cohne, Rappaport & Segal, Salt Lake City, Utah, for himself as trustee.

## FACTS AND PROCEDURAL BACKGROUND

GLEN E. CLARK, Bankruptcy Judge.

Before the Court are three contested matters which have been consolidated to consider common issues of law concerning whether or not these self-employed debtors' interests in their Keogh retirement plans are excluded or exempt from their bankruptcy estates.

### The Kerr Case

Thomas A. Kerr, a practicing dentist, filed a voluntary petition for relief under Chapter 7 on November 6, 1984. The principal assets listed on his bankruptcy sched-

ules are two Keogh retirement accounts totaling $77,000.00. The debtor claimed the funds in the plans as exempt pursuant to Utah Code Ann. § 78–23–5(3).

Kerr first established a Keogh plan in 1964 and has contributed to it for 18 years. In August 1984, Kerr deposited his retirement funds into an " 'H.R. 10' Keogh Retirement Plan and Trust," Account No. 489982, and designated Zions First National Bank as Trustee. The plan is qualified under ERISA. The plan contains a clause which prohibits a participant or beneficiary from alienating or assigning any benefit provided under the plan.[1]

Deseret Federal Savings and Loan Association ("Deseret Federal") was listed on the debtor's A–3 Schedule as a creditor having an unsecured claim in the sum of $250,000.00. The claim arises out of a judgment against the debtor entered by the Third Judicial District Court for Salt Lake County, State of Utah, on March 29, 1983. Deseret Federal filed an objection to the debtor's claim of exemptions on February 6, 1985. The objection was heard on March 28, 1985 and taken under advisement.

### The McClean Cases

Gordon McClean, Sr. and Gordon McClean, Jr., father and son, each filed a petition for voluntary relief under Chapter 7 on May 10, 1984. Both debtors are self-employed chiropractors. The only assets with recognized values listed in their bankruptcy schedules filed pursuant to Section 521(1) and Bankruptcy Rule 1007(b) were wearing apparel, ski equipment, and certain ERISA-qualified pension plans. McClean, Sr. listed an E.F. Hutton Keogh plan with a value of $56,000.00, and McClean, Jr. listed two plans with an aggregate value of $33,-651.12. Funds in the plans were claimed as exempt property by the debtors on Schedule B–4 pursuant to Bankruptcy Rule 4003(a). The trustee questioned each debtor about the plans at the Section 341 meeting held on June 11, 1984. On July 9, the trustee filed objections to the debtors'

---

1. Paragraph 8.05 of the Trust Agreement provides:

    *Assignment or Alienation.* Neither a Participant nor a Beneficiary shall assign or alienate

any benefit provided under the Plan, and the Trustee shall not recognize any such assignment or alienation.

claimed exemptions. The parties submitted memoranda of law and an evidentiary hearing was held on December 7, 1984.

At the hearing, the trustee offered and the Court received in evidence Gordon McClean Jr.'s Keogh Account, entitled "Colonial Profit-Sharing Retirement Plan and Trust for Self-Employed Individuals." The plan qualifies under Section 401 of the Internal Revenue Code for self-employed individuals. Ronald L. Tressler, an account executive with Prudential-Bache, testified that the Keogh account set up for Gordon McClean, Jr. had funds on deposit in the amount of $33,351.12. Mark J. Meidell, an account executive with E.F. Hutton & Company, testified that the McClean pension plans were established as ERISA-qualified Keogh accounts.[2] The debtors were granted leave to join E.F. Hutton & Company and Prudential-Bache in this proceeding, but apparently have declined to do so.

## DISCUSSION

Debtors' attempts to keep their pension plan funds[3] out of the bankruptcy estate have resulted in increasing litigation and

much discussion by courts and commentators[4] in recent years. Judicial resolution of these cases involves the interpretation of ambiguous statutory language in the Bankruptcy Code and conflicting policy objectives which exist between the Employee Retirement Income Security Act of 1974 ("ERISA") and the Code.

Basically, debtors have urged courts to exclude or exempt pension funds on three grounds. First, they argue that such funds are excluded property under § 541(c)(2). Second, they argue that ERISA-qualified pension plans are exempted under § 522(b)(2)(A). Third, where, as in Utah, a state has "opted out" of the federal exemptions, debtors look to the state exemptions act. Each of these positions has been raised by the parties in these proceedings.

### I.

*Property of the Estate and the § 541(c)(2) Exclusion*

Section 541(a) provides that a bankruptcy estate is comprised of "all legal or eq-

---

2. Mr. Meidell appeared and testified pursuant to a subpoena issued by the Court at the trustee's request which directed him to bring any documentation related to the McClean accounts. He testified that the documents were in New York and were being sent to him. The Court directed Meidell upon receipt of the documents to turn them over to his attorney and instructed him to inform counsel for the trustee and the McCleans. To date counsel have neither moved to supplement the record with the documents relating to the plans or to reopen the hearing for the purpose of introducing additional evidence based upon the documents. Therefore, the Court considers the record closed and shall decide the matter on the basis of the evidence presently before it.

3. Although a wide variety of pension plans exist, there are four general categories. The first is the traditional defined-benefit pension plan, which provides for a guaranteed benefit after retirement, and is usually connected to some portion or percentage of the worker's salary. The second category is the defined-contribution plan, which simply operates to provide certain contributions to a special retirement account during the employee's stay with the employer. The third category of pension plan, the Keogh plan, is limited to use by self-employed persons, and is usually controlled and administered by the self-employed individual. Keogh plans are

established pursuant to the Keogh-Smathers Act, Pub.L. No. 87–792, 76 Stat. 809 (1962) (codified in scattered sections of the Internal Revenue Code). The final category consists of individual retirement accounts ("IRAs"). Note, *The Fate of ERISA-Qualified Pension Plans Under the Federal Bankruptcy Code*, 11 Wm. Mitchell L.Rev. 1045 n. 2 (1985).

4. *See, e.g.,* Note, *Contra Goff: Of Retirement Trusts and Bankruptcy Code § 541(c)(2)*, 32 U.C. L.A.L.Rev. 1266–1331 (1985); Note, *The Fate of ERISA-Qualified Pension Plans Under the Federal Bankruptcy Code*, Comment, *Retirement Plan Assets: The Retention Rights of an Oklahoma Debtor in Bankruptcy*, 20 Tulsa L.J. 589–604 (1985); Wohl, *Pension and Bankruptcy Laws: A Clash of Social Policies*, 64 N.C.L.Rev. 3–36 (1985); Note, *The Individual Debtor's Interest in ERISA Benefits: Is It Property of the Estate? Is It Exempt?*, 2 Bkrtcy.Dev.J. 293–316 (1985); Note, *Corporate Pension Plans as Property of the Bankruptcy Estate*, 69 Minn.L.Rev. 1113–1134 (1985); Note, *Exemption of ERISA Benefits Under Section 522(b)(2)(A) of the Bankruptcy Code*, 83 Mich.L.Rev. 214–236 (1984); Weintraub & Resnick, *From the Bankruptcy Courts: In Re Goff—Keogh Plans and IRAs as Property of the Bankruptcy Estate*, 16 U.C.C.L.J. 264 (1984).

uitable interest of the debtor in property as of the commencement of the case." Congress intended the scope of § 541(a)(1) to be very broad and to expand the reach of the bankruptcy estate beyond what had existed under the former Act. *United States v. Whiting Pools*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

Under the Bankruptcy Act of 1898, property of the estate had been defined in terms of transferability and leviability. 11 U.S.C. § 110(a)(5) (repealed Oct. 1, 1979). *See* 3 REMINGTON ON BANKRUPTCY § 1178, at 9–11 (J. Henderson rev. ed. 1957). A two-part test was applied to determine whether property passed into the bankruptcy estate: At the date of filing the petition, could the property have been (1) transferred by the debtor?; or (2) levied upon and sold by judicial process against him, or otherwise seized, impounded, or sequestered? If neither one of these conditions was met, the property was excluded from the estate. 4A COLLIER ON BANKRUPTCY ¶ 70.15[2], at 137 (14th ed. 1978). The primary objective of § 70(a)(5), former

11 U.S.C. § 110(a)(5), was "to secure for creditors everything of value the bankrupt may [have possessed] in alienable or leviable form when he file[d] his petition." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514, 15 L.Ed.2d 428 (1966).

Under the 1978 Bankruptcy Code, however, *all* property of the debtor comes into the estate upon the filing of a bankruptcy petition. After the property comes into the estate, the debtor may claim certain exemptions under § 522. S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 5868. Section 541(c)(2) creates an exception to the broad inclusion of all of the debtor's property in the bankruptcy estate. It provides that certain property subject to restrictions on alienation which are enforceable "under applicable nonbankruptcy law" never becomes property of the estate.[5] *Matter of Reagan*, 741 F.2d 95, 97 (5th Cir.1984).

The issue of whether an ERISA-qualified plan fits within the terms of the § 541(c)(2) exception is complicated by the fact that there is a federal exemption[6] in the Bank-

---

**5.** Section 541(c)(2) states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

**6.** Section 522(d)(10)(E) provides:

The following property may be exempted under subsection (b)(1) of this section:

\* \* \* \* \* \*

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

The significance of this federal exemption on the question of whether pension rights are subject to exclusion under § 541(c)(2) has been the

subject of considerable disagreement among the courts. *Compare In re Graham*, 726 F.2d 1268, 1272 (8th Cir.1984) (presence of § 522(d)(10)(E) suggests that Congress did *not* intend § 541(c)(2) to be a broad exclusion which would keep debtors' entire ERISA benefits out of estate) *and Regan v. Ross*, 691 F.2d 81, 86 (2d Cir.1982) (from coexistence of § 522(d)(10)(E) and § 541(c)(2) it may be inferred that Congress did not intend to exclude pension funds from becoming property of the estate) *with McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1207–08 (4th Cir. 1985) (§ 541(c)(2) is a more narrowly focused provision that excludes from the estate some, but not all, of the employment benefits which, if included in the estate property, might then be subject to exemption under § 522(d)(10)(E)) *and Matter of Goff*, 706 F.2d 574, 587 (5th Cir. 1983) (given that § 522(d)(10)(E) is much broader than § 541, court may consider whether pension plan qualifies as a spendthrift trust under state law). *See also In re White*, 47 B.R. 410 (W.D.Wash.1985); *In re DeWeese*, 47 B.R. 251, Bankr.L.Rep. (CCH) ¶ 70,340, 12 C.B.C.2d 404 (Bkrtcy.W.D.N.C.1985); *Matter of Cook*, 43 B.R. 996, 1000 (N.D.Ind.1984).

ruptcy Code which appears to apply more specifically to ERISA. *Matter of Jones*, 43 B.R. 1002, 1005 (N.D.Ind.1984). Since § 522(d)(10)(E) specifically refers to pension plans and profit-sharing plans, it is reasonable to conclude that Congress intended that such benefits were to be first brought into the estate and then claimed as exempt by the debtor.

Courts have interpreted § 541(c)(2) in two ways. The liberal view, typified by the decision of the court in *In re Threewitt*, 24 B.R. 927, 9 B.C.D. 1225, Bankr.L.Rep. (CCH) ¶ 69,020, 8 C.B.C.2d 890 (D.Kan. 1982) holds that since ERISA spendthrift restrictions are enforceable against creditors outside of bankruptcy, then they are enforceable against the bankruptcy trustee. Courts adopting this view point out that the actual language of the statute does not limit the exclusion to spendthrift trusts. *See, e.g., Warren v. G.M. Scott & Sons (In re Phillips)*, 34 B.R. 543, 544–45, Bankr.L.Rep. (CCH) ¶ 69,566 (Bkrtcy.S.D. Ohio 1983); *In re Pruitt*, 30 B.R. 330, 331, 10 B.C.D. 760, Bankr.L.Rep. (CCH) ¶ 69,-355, 8 C.B.C.2d 912 (Bkrtcy.D.Colo.1983). These cases are based on a broad reading of § 541(c)(2) as including *all* trusts with assignment and transfer restrictions recognized in general federal nonbankruptcy law. *Matter of Nichols*, 42 B.R. 772, 775 (Bkrtcy.M.D.Fla.1984). The *Threewitt* line of cases rest their holding that pension funds are excluded from the debtor's estate under § 541(c)(2) on three grounds: (1) that the statute does not explicitly use the term "spendthrift trust"; (2) that under nonbankruptcy law a debtor's interest in an ERISA-qualified plan is beyond the reach of his creditors; and (3) the § 522(d)(10)(E) exemption for pension and profit-sharing plans actually "overlaps" § 541(c)(2) rather than indicating that ERISA funds were intended as part of the bankruptcy estate which could then be exempted under § 522(d)(10)(E). *Matter of Berndt*, 34 B.R. 515, 518–19, Bankr.L.Rep (CCH) ¶ 69,467, 9 C.B.C.2d 848 (Bkrtcy.N.D.Ind.1983). *See, e.g., In re Holt*, 32 B.R. 767, 10 B.C.D. 1267, Bankr.L.Rep. (CCH) ¶ 69,353 (Bkrtcy. E.D.Tenn.1983); *In re Pruitt*, 30 B.R. at

331–32; *In re Threewitt*, 24 B.R. at 929–30; *In re Rogers*, 24 B.R. 181, 182–83, Bankr.L. Rep. (CCH) ¶ 68,880 (Bkrtcy.D.Ariz.1982); *In re Ralstin*, 61 B.R. 502, Bankr.L.Rep. (CCH) ¶ 71,184 (Bkrtcy.D.Kan.1986); *Warren v. G.M. Scott & Sons*, 34 B.R. at 545; *In re DiPiazza*, 29 B.R. 916, 10 B.C.D. 618, Bankr.L.Rep. (CCH) ¶ 69,226, 8 C.B.C.2d 654 (Bkrtcy.N.D.Ill.1983). Under these decisions, the debtor's interest in a qualified pension plan would always be excluded from the estate. *In re Elsea*, 47 B.R. 142, 147 (Bkrtcy.E.D.Tenn.1985).

The majority position, however, based primarily on the legislative history of § 541(c)(2), and on § 522(d)(10)(E), is that anti-alienation and nonassignability clauses in qualified pension plans do not prevent the debtor's interest from coming into the bankruptcy estate. *In re Elsea*, 47 B.R. at 147. *See, e.g., In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied Daniel v. Security Pacific Nat. Bank*, —— U.S. ——, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d at 1268; *In re Goff*, 706 F.2d at 574; *Regan v. Ross*, 691 F.2d at 81; *In re Goldberg*, 59 B.R. 201, Bankr.L.Rep. (CCH) ¶ 71,068 (Bkrtcy.N.D. Okla.1986); *In re Schwartz*, 58 B.R. 606 (Bkrtcy.N.D.Iowa 1984); *In re McKenna*, 58 B.R. 221 (Bkrtcy.N.D.Iowa 1985); *In re White*, 47 B.R. 410 (W.D.Wash.1985); *In re DeWeese*, 47 B.R. 251, Bankr.L.Rep. (CCH) ¶ 70,340, 12 C.B.C.2d 404 (Bkrtcy.W.D.N.C. 1985); *In re Nichols*, 42 B.R. 772, 776 (Bkrtcy.M.D.Fla.1984). In cases involving pension plans such as these, the courts have treated the debtor's interest in the plan as a beneficial interest in a trust. *In re Elsea*, 47 B.R. at 147. The question then arises as to what Congress meant in Section 541(c)(2) by the words "applicable nonbankruptcy law" under which the debtor's interest in a retirement trust may be excluded from the estate. ERISA is codified partly in the Internal Revenue Code and partly in Title 29 of the United States Code, and it contains anti-alienation provisions in each. It provides that a pension plan can qualify only if it includes a restric-

tion on transfer of the beneficiary's interest. These statutes do not specifically require a "spendthrift" restriction that prohibits creditors from using garnishment, attachment, execution or other process to collect the beneficiary's debt directly from the administrator of the pension plan. However, the rule has developed that a spendthrift restriction is required and is enforceable against creditors. *Id.* at 146–47, *citing* 29 U.S.C. § 1056(d); 26 U.S.C. § 401(a)(13); 26 C.F.R. § 1.401(a)–13; *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980).

The majority and trend position, particularly among the appellate courts, is that the reference in Section 541(c) to "applicable nonbankruptcy law" applies only to state law concerning spendthrift trusts. *See, e.g., In re Daniel,* 771 F.2d at 1360; *In re Lichstrahl,* 750 F.2d at 1490; *In re Graham,* 726 F.2d at 1271; *Matter of Goff,* 706 F.2d at 582; *In re Crenshaw,* 51 B.R. 554, 556–57, Bankr.L.Rep. (CCH) ¶ 71,009 (N.D.Ala.1985); *Matter of Cook,* 43 B.R. 996, 999–1000 (N.D.Ind.1984); *SSA Baltimore Federal Credit Union v. Bizon,* 42 B.R. 338, 341–42 (D.Md.1984); *In re O'Brien,* 50 B.R. 67, 73, 13 B.C.D. 97, 12 C.B.C.2d 1161 (Bkrtcy.E.D.Va.1985); *In re Gillett,* 46 B.R. 642, 644 (Bkrtcy.S.D.Fla. 1985); *In re Ridenour,* 45 B.R. 72, 78, Bankr.L.Rep. (CCH) ¶ 70,172, 11 C.B.C.2d 1086 (Bkrtcy.E.D.Tenn.1984); *Matter of Jones,* 43 B.R. at 1006; *In re Huff,* 42 B.R. 553, 556, Bankr.L.Rep. (CCH) ¶ 70,038 (Bkrtcy.N.D.Ill.1984); *Matter of Berndt,* 34 B.R. at 515; *Matter of Kelley,* 31 B.R. 786, 788, 10 B.C.D. 1457 (Bkrtcy.N.D.Ohio 1983); *In re DiPiazza,* 29 B.R. at 918.

■ This position enjoys support from the legislative history.

Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 6325. The Senate Report similarly states that § 541(c)(2) "preserves restrictions on a transfer of a spendthrift trust ... enforceable [under] nonbankruptcy law" but the Senate bill to which the report relates, S. 2266, would have limited the extent to which such property would be excluded from the estate to that "reasonably necessary" for the support of the debtor and his dependents. S.Rep. No. 95–989, 95th Cong., 2d Sess. 83 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 5869. Congress adopted the House version and rejected the narrower position taken in the Senate version "with respect to income limitations on a *spend-thrift trust.*" 124 Cong.Rec.S. 17, 413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec.H. 11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards) (emphasis added). Therefore, this Court joins in the position of the Fifth, Eighth, Ninth and Eleventh Circuit Courts of Appeals that pension plans will be excluded from property of the estates only if they are enforceable under state law as spendthrift trusts.

The Utah Supreme Court has not indicated whether or not spendthrift trusts are valid in Utah to any extent, but has stated that there is a presumption against the creation of a spendthrift trust unless either words to that effect are set forth, or the clear and undoubted intention is manifested by the terms of the trust instrument. *Cronquist v. Utah State Agricultural College,* 114 Utah 426, 201 P.2d 280, 284 (1949). In general, a spendthrift trust is one in which the beneficiary is prohibited from anticipating or assigning his interest in or income from the trust fund. *Id.* at

282. *See* Restatement (Second) of Trusts § 152(2) (1959). In *Leach v. Anderson*, 535 P.2d 1241 (Utah 1975), the Utah Supreme Court invalidated as a fraudulent conveyance a purported spendthrift trust, wherein the entire trust *res* was committed to maintaining the settlor.

■ The Utah cases cited suggest that Utah would follow the traditional view and hold that restrictions on alienation will *not* be enforced against creditors if the trust is self-settled, that is, if the settlor and beneficiary of the trust are the same person. *See* 4 G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 233 (2d ed. 1966); 2 A. Scott, THE LAW OF TRUSTS § 156 (3d ed. 1967); E. Griswold, SPENDTHRIFT TRUSTS § 474, at 543 (2d ed. 1947); Restatement (Second) of Trusts § 156(1). Accordingly, this Court concludes that the debtors' pension plans do not constitute valid spendthrift trusts under Utah law and, therefore, are not excludable from property of the estate under § 541(c)(2).

## II.

### *Exemption of the Debtors' Pension Funds Under § 522(b)(2)(A)*

Having determined that the pension funds are not excluded from the property of the estate under § 541(c)(2), the Court must next consider whether they are exempt under § 522(b)(2)(A). That subsection permits the debtor to claim as exempt the property allowable under the state exemption *as well as* any property that is exempt under federal law *other than* the alternative federal exemptions listed in § 522(d). *In re Stewart*, 32 B.R. 132, 136, 11 B.C.D. 27, Bankr.L.Rep. (CCH) ¶ 69,342 (Bkrtcy.D. Utah 1983).

The House and Senate Reports on § 522(b)(2)(A) provide an illustrative list of property that can be exempted under federal laws:

Foreign Service Retirement and Disability payments, 22 U.S.C. 1104; Social security payments, 42 U.S.C. 407; Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717; Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601; Civil service retirement benefits, 5 U.S.C. 729, 2265; Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916; Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L); Veterans benefits, 45 U.S.C. 352(E); Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 75 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 5861; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News, p. 6316.

■ In *Graham*, the debtor argued that the plan's prohibition against assignment and alienation required by ERISA [7] and by the Internal Revenue Code [8] in order to qualify the plan for tax purposes, made his interest in the plan "property that is exempt under Federal law." The Court noted that the House and Senate Reports on § 522(b)(2)(A) each contained a non-exclusive illustrative list of property which might be exempted under federal laws, but rejected the view that ERISA plan benefits should be included.

While the above list was not meant to be exclusive, we find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a "Federal law" upon which a § 522(b)(2)(A) exemption could be based. *See In re Goff*, 706 F.2d at 585. Furthermore, although the provisions of some of the statutes on the list creating a federal exemption are similar to the anti-alienation provision of ERISA, there is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA. The pensions, wages, benefits and pay-

---

7. 29 U.S.C. § 1056(d).

8. 26 U.S.C. § 401(a).

ments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems. We thus conclude, as did the Fifth Circuit, [*In re Goff,* 706 F.2d at 586] that Congress did not intend to include ERISA plans within the other "Federal law" exemption of § 522.

726 F.2d at 1274. The Eleventh Circuit reasoned similarly in *Lichstrahl:*

Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *Matter of Goff,* 706 F.2d at 585; *see also In re Graham,* 726 F.2d 1268, 1274 (8th Cir.1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Code. Of particular importance is ERISA's inclusion within the alternative federal exemptions listed in § 522(d). The failure to mention ERISA in connection with § 522(b) was intentional. *Matter of Goff,* 706 F.2d at 585.

Furthermore, excluding ERISA-qualified pension plans from the list of property exempted under federal law is consistent with an important distinction between exempted property and property covered by ERISA. Despite the similarity between the anti-alienation provisions of ERISA and some of the listed statutes, the "pensions, wages, benefits and payments included in the ... list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems." *In re Graham,* 726 F.2d at 1274. It is this "peculiarly federal nature" shared by the cited statutes that identifies and determines which federal statutes are to be included within the "other federal law" exemption of § 522 and which, like ERISA, are to be excluded. *See Matter of Goff,* 706 F.2d at 586.

750 F.2d at 1491. *Accord, Matter of Goff,* 706 F.2d at 585; *In re Daniel,* 771 F.2d at 1361; *In re White,* 47 B.R. 410, 412–13 (W.D.Wash.1985); *In re Gillett,* 46 B.R. 642, 644 (Bkrtcy.S.D.Fla.1985). Although the issue is not free from doubt, and while it would be highly desirable from a policy standpoint if Congress were to address the issue and not leave it to the courts to draw inferences from Congressional silence, this Court is inclined to follow the reasoning of *Goff* and *Lichstrahl,* and reject that of *In re Hinshaw,* 23 B.R. 233, 9 B.C.D. 769, Bankr.L.Rep. (CCH) ¶ 69,066, 7 C.B.C.2d 323 (Bkrtcy.D.Kan.1982). In this regard it is perhaps significant that Congress chose not to deal with the issue in the 1984 Amendments, suggesting it did not disagree with the interpretation given § 522(b)(2)(A) by a majority of the courts. This Court therefore holds that the debtors' interests in their retirement plans are not exempt under § 522(b)(2)(A) as "other federal law."

### III.

*Exemption of the Debtors' Pension Funds Under Utah Code Ann. § 78–23–6(3)*

In 1981, the Utah legislature decided to "opt out" of the federal exemptions by enacting the Utah Exemption Act. *See generally In re Neiheisel,* 32 B.R. 146, 11 B.C.D. 32, Bankr.L.Rep. (CCH) ¶ 69,440 (Bkrtcy.D. Utah 1983). Section 78–23–6(3) provides:

[A]n individual is entitled to exemption of the following property to the extent reasonably necessary for the support of the individual and his dependents:

\*     \*     \*     \*     \*     \*

(3) Assets held, payments, and amounts payable under a stock bonus, pension, profit-sharing, annuity, or similar plan providing benefits other than by reason of illness or disability.

◼  The language of this exemption is drawn from Section 6(a)(5) of the Uniform Exemptions Act, which in turn was derived from Section 522(d)(10)(E) of the Bankrupt-

cy Code and Section 4–503(b)(6) of the bankruptcy bill proposed by the Commission on the Bankruptcy Laws of the United States. It clearly applies to these debtors' retirement plans but is limited to funds "reasonably necessary for the support of the [debtor] and his dependents." What is "reasonably necessary" under Utah Code Ann. § 78–23–6(3) is clearly a question of fact requiring a further evidentiary hearing. Factors which the Court may consider in determining what is reasonably necessary for the support of each debtor and his dependents will include, without limitation, the debtor's age, health, future earnings capacity, and necessary expenditures. *See In re Kochell,* 26 B.R. 86, 87, 9 B.C.D. 1329, Bankr.L.Rep. (CCH) ¶ 68,942 (Bkrtcy. W.D.Wis.1982), *aff'd* 31 B.R. 139 (W.D.Wis. 1983), *aff'd* 732 F.2d 564 (7th Cir.1984); *In re Donaghy,* 11 B.R. 677, 680, Bankr.L. Rep. (CCH) ¶ 68,049, 4 C.B.C.2d 1099 (Bkrtcy.S.D.N.Y.1981).

### CONCLUSION

The purpose of personal bankruptcy under Chapter 7 is two-fold. First, it provides a mechanism for the liquidation of the debtor's estate for the satisfaction of creditors' claims. Second, by means of the discharge and application of the exemption provisions, it relieves the debtor from his debt burdens and gives him a "fresh start."[9] The exemption provisions of the Bankruptcy Code are the product of much debate and compromise by Congress, and reflect two not necessarily inconsistent, but certainly different philosophical purposes. The first object of any exemption scheme is to provide the debtor with the minimum amount of property necessary to retain his dignity and to attempt self-rehabilitation following his discharge. The second purpose behind exemption laws is to set a ceiling on the maximum amount of property which a debtor should be permitted to retain before infringing on the reasonable

interests of creditors in that property.[10] The unwillingness of Congress to provide a blanket exclusion or exemption of retirement funds suggests a balancing of these purposes.

Based upon the foregoing, this Court concludes that the debtors' pension plan funds constitute property of their respective estates not excluded by operation of § 541(c)(2). The funds are not subject to exemption pursuant to § 522(b)(2)(A) under "other federal law," but are exempt to the extent reasonably necessary for the support of the debtors and their dependents under Utah Code Ann. § 78–23–6(3).

Counsel for Deseret Federal shall prepare an appropriate order in the *Kerr* case and the trustee of the estates of Gordon McClean, Sr. and Gordon McClean, Jr. shall do likewise in those cases. The foregoing memorandum opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

**9.** *See Hearings on H.R. 31 and H.R. 32 Before the House Subcomm. on Civil and Const. Rights,* 94th Cong., 1st & 2d Sess., Ser. No. 27, Pt. 2 at 768 (1976) (statement of Prof. Philip Shuchman).

**10.** *Id.* Pt. 3 at 1658 (statement of L.E. Creel III, representing the Dallas Bar Association).