**In the Matter of Sharon Rose CRESS, Debtor.**

**William J. TABOR, Plaintiff,**

v.

**EMPLOYEE BENEFITS COMMITTEE; Trustees of the Lilly Employee Savings Plan; and Sharon Rose Cress, Defendants.**

**Bankruptcy No. 89–1441 TH.**
**Adv. No. 90–8009.**

United States Bankruptcy Court,
S.D. Indiana,
Terre Haute Division.

Nov. 15, 1990.

William Tabor, Terre Haute, Ind., pro se.

John W. Purcell, Indianapolis, Ind., Michael Thomas Ellis, Terre Haute, Ind., for Employee Benefits Committee & Trustees of the Lilly Employee Sav. Plan.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge, Sitting by Special Designation.

This matter comes before the court on Trustee William J. Tabor's ("Trustee") MOTION FOR SUMMARY JUDGMENT ON HIS COMPLAINT FOR ACCOUNTING AND TURNOVER OF ASSETS against defendants Employee Benefits Committee and Trustees of the Lilly Employee Savings Plan ("the Fiduciaries"), and Fiduciaries'

MOTION FOR SUMMARY JUDGMENT. The debtor/defendant, Sharon Rose Cress ("Debtor"), an employee of Eli Lilly & Co., is a participant in Eli Lilly & Co.'s pension plan. The Trustee seeks turnover of a portion of the Debtor's vested interest in the pension plan, contending that it is property of the estate.

## JURISDICTION

Pursuant to 28 U.S.C. § 157(a) and the October 7, 1988 "Designation of a Bankruptcy Judge for Service in Another District within the Circuit," issued by the Judicial Council of the Seventh Circuit, assigning the undersigned to hear certain cases in the Terre Haute Division of the Bankruptcy Court for the Southern District of Indiana, this case has been referred to the undersigned judge for hearing and determination. After reviewing the record, the court determines that the matter before the court is a core proceeding within the meaning of § 157(b)(2)(E). This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to bankruptcy proceedings by Bankruptcy Rules 7052 and 9014.

## BACKGROUND AND FACTS

Debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) on September 19, 1989. On December 5, 1989, the Trustee filed his Inventory indicating that the only administrable asset of the estate is the Debtor's vested interest a § 401(k) Savings Plan ("the Plan") sponsored by her employer, Eli Lilly & Co. As an employee of Eli Lilly, the Debtor was entitled to participate in the Plan which is a profit-sharing, stock bonus and employee stock ownership plan. The Plan was first established in 1956 and restated effective January 1, 1990. The Plan is qualified under § 401(a) of the Internal Revenue Code of 1986 ("IRC") (26 U.S.C. § 1 *et seq.*) and is a pension plan within the meaning of § 3(2)[1] of the Em-

ployee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1001 *et seq.*). Employee Benefits Committee and the Trustees of the Lilly Employees Savings Plan are the Plan fiduciaries.

The Debtor has participated in the Plan since October 1, 1979. The Debtor has a Participant's Account which contains two types of accounts: (1) a "Profit–Sharing Account" which consists of contributions and accrued earnings made under § 401(k) "Profit–Sharing Plan" and (2) an "ESOP Account" which consists of contributions and earnings under the Employee Stock Ownership Plan. Each account is funded differently by both employer and employee contributions.[2] As of September 30, 1989, the Debtor's interest in the Plan totalled $8,218.88. The Debtor's interest in the ESOP Account equals $5,481.02. While $2,351.33 of this is not subject to withdrawal until retirement, death, disability or termination of employment, the other $3,129.69 is available for voluntary withdrawal by the Debtor upon written directions to the Employee's Benefits Committee. The Debtor made one such withdrawal in April of 1986. The Trustee abandoned interest in the $2,351.33, but requested turnover of the remaining $3,129.69.

The Debtor's interest in the Profit–Sharing Account is the subject of this controversy. The Debtor's interest in this account is $2,737.86. The amount in this account is subject to withdrawal only for "financial hardships" as defined in § 7.01 of the Plan Declaration. Withdrawal may be made for certain expenses incurred by the participant, her spouse or her dependents. These expenses include medical expenses, purchase of a principal residence, tuition for post-secondary education, avoidance of eviction from or foreclosure of a mortgage on a principal residence, and funeral expenses. The participant must show that she cannot get funds from any other source. In addition to the hardship withdrawal, the participant may receive the entire value of her Participant's Account

---

1. 29 U.S.C. § 1002 (1988).

2. Because the mechanism for funding is not relevant to the disposition of the case, the details of funding have been left out.

upon termination of employment, whether by voluntary resignation or by dismissal, if the participant has completed five years of service.

The Trustee requested voluntary turnover of the funds in the Profit–Sharing Account from the Fiduciaries. They refused to do so. The Trustee then initiated an adversary proceeding to compel the Fiduciaries to turn over the funds.[3] As the facts were uncontroverted and stipulated to and only the legal question as to whether turnover was required existed, the parties filed cross motions for summary judgment.

As noted above, the Plan is one within the meaning of § 3(2) of ERISA (29 U.S.C. § 1002) and qualifies under § 401(a) of the IRC. As such, the Plan must contain an anti-alienation clause. That clause reads as follows:

*Spendthrift Provision.*
The funds held pursuant to any Trust shall not be liable in any way, whether by process of law or otherwise, for the debts or other obligations of any Employee, Retired Employee, or other person. Benefits payable under this Plan shall not be subject, in any manner to anticipation, alienation, sale, transfer, or assignment by the Employee, and any attempt to do so shall be void. Notwithstanding any of the foregoing, the Plan Fiduciaries are expressly authorized to comply with a qualified domestic relations order pursuant to subsection 10.04 hereof.

The Lilly Employee Savings Plan, § 14.03. The Trustee argues that despite this language the Debtor's interest in the Profit–Sharing Account is subject to turnover as property of the estate under 11 U.S.C. § 541(a)(1). The Trustee further argues that because the Debtor has access to the account it is not a traditional spend-thrift trust and cannot be excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). The Fiduciaries argue that the Plan meets the requirements of § 541(c)(2) and should be excluded from the estate. They also argue

that by ordering turnover in contravention of the terms of the Plan, the Plan will lose its favorable tax status and that they, as the Plan fiduciaries, will be subject to personal liability for the loss pursuant to 29 U.S.C. § 1109.

## DISCUSSION

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593 (7th Cir.1987). Rule 56 of the Federal Rules of Civil Procedure is made applicable to bankruptcy adversary proceedings through Bankruptcy Rule 7056. There being no genuine issue of fact in this case as the parties have stipulated to the facts, judgment can be rendered as a matter of law.

The issues raised by the cross motions for summary judgment are as follows:

1) Whether 11 U.S.C. § 541(c)(2) applies only to traditional spendthrift trusts under state law or whether ERISA qualifies as "applicable nonbankruptcy law."

2) Whether Indiana Code § 30–4–3–2(c) includes in its definition of spendthrift trusts any trust within the meaning of § 1002 of ERISA, qualifying under § 401(a) of the IRC and containing an anti-alienation provision pursuant to § 1056(d) of ERISA.

3) Whether the fiduciary obligations of the Defendants and the anti-alienation clause in the Plan create a bar to the court fashioning an appropriate remedy for turnover of the funds to the trustee.

For the reasons set out below, the court finds that § 541(c)(2) only applies to traditional spendthrift trusts; that ERISA and IRC qualified pension plans are not automatically spendthrift trusts under the Indiana Code; and that no bars exist to the court fashioning an appropriate remedy for turnover of the funds.

---

**3.** *Tabor v. Employees Benefit Comm. & Trustees of the Lilly Employee Savings Plan (In re Cress),* Complaint for Accounting and Turnover of As-

sets, No. 89–1441, Adv. No. 90–8009, filed March 30, 1990.

*11 U.S.C. § 541(c)(2)*

When a petition in bankruptcy is filed, most property owned by the debtor becomes property of the newly-created bankruptcy estate. Section 541 of the Bankruptcy Code governs what property will become part of the estate. The estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). "Thus, in defining property of the bankruptcy estate, it is an inclusive statute which is particularly 'broad and all embracing.'" *In re Gifford*, 93 B.R. 636, 638 (Bankr.N.D.Ind.1988), citing *In re Miller*, 16 B.R. 790, 791 (Bankr.D.Md. 1982). *See also U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Pension plans normally fall within the inclusive reach of § 541(a)(1).[4]

Congress did, however, provide for a few exceptions to § 541(a)(1). One of these exceptions is the subject of controversy here. Section 541(c)(2) states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (1988). The controversy stems from the words "applicable nonbankruptcy law."

While neither the Seventh Circuit nor the Bankruptcy or District Courts for the Southern District of Indiana have ruled on the question of whether the term "applicable nonbankruptcy law" means traditional state spendthrift trust law or whether it is broader, many other courts have. The majority of courts, including all but one of the circuit courts that have ruled on the question, have concluded that § 541(c)(2) applies only to traditional spendthrift trusts. The leading case on this question is *In re Goff*, 706 F.2d 574 (5th Cir.1983). After an extensive discussion the court concluded that § 541(c)(2) applied only to spendthrift trusts, based on three reasons.

First, the legislative history of that section "indicates that Congress had something very specific in mind with its facially broad reference to 'applicable nonbankruptcy law' as the benchmark for assessing the enforceability of trust restraints on alienation in bankruptcy." *Goff*, 706 F.2d at 581.[5] After reviewing the legislative history of § 541(c)(2), the court concluded that ". . . Congress intended by its reference to 'applicable nonbankruptcy law' to exempt from the estate only those 'spendthrift trusts' traditionally beyond the reach of creditors under state law." *Goff*, 706 F.2d at 582.

Second, the court in *Goff* recognized that "[t]he specific legislative intent behind Section 541(c)(2) is reinforced by a consideration of the overall congressional scheme embodied in the Bankruptcy Code." *Goff*, 706 F.2d at 582. The court found that when Congress wanted to make reference to ERISA in the Bankruptcy Code, it did so explicitly. For instance, under the Federal exemptions, Congress specifically provided for the exemption of an ERISA pension plan. However, in 11 U.S.C. § 522(b)(2)(A), Congress also provided for certain Federal exemptions even if a state exemption scheme was chosen. ERISA qualified plans are not on its illustrative list of property interests that qualify for exemptions. The court concluded that "Congress did not intend to do ambiguously in Section 541 that which it clearly did not do directly in Section 522, although Section 522 explicitly addresses the extent to which other 'Federal law' and retirement benefit exemptions would be recognized." *Goff*, 706 F.2d at 582.

Lastly, the court noted that while ERISA specifically preempts state law,[6] it ". . . was not intended to affect the operation of other federal law." *Goff*, 706 F.2d at 587.

---

**4.** An interest in a pension plan is property under Indiana law. Ind.Code § 32–3–2–1 (1980 & Supp.1990).

**5.** The Fiduciaries argue that § 541(c)(2) is not ambiguous on its face and, therefore, the legislative history should not be considered to determine its meaning. However, the word "applicable" in the statute makes it ambiguous. Congress need not have inserted it, had it desired all nonbankruptcy law to be included.

**6.** *See* 29 U.S.C. § 1144(a) (1988).

"Thus, ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary." *Id.* Based on these three factors, the court concluded that § 541(c)(2) was meant only to remove from the estate a debtor's interest in a traditional state spendthrift trust and not an ERISA qualified pension plan unless it met the elements of a spendthrift trust.

As noted above, the majority of courts that have ruled on this issue[7] have followed *Goff.* However, the Fiduciaries urge that in light of a recent Supreme Court case involving ERISA's anti-alienation provision, this court adopt a stance contrary to the majority of the courts deciding this issue. In *Guidry v. Sheet Metal Workers National Pension Fund,* —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court would not allow a constructive trust to be imposed on an ERISA pension plan because of the anti-alienation provision. Mr. Guidry, the CEO of Sheet Metal Workers Union, had plead guilty to embezzling funds from the Union. The lower court had imposed a constructive trust on the pension fund and the circuit court affirmed. The Supreme Court reversed, refusing to read into ERISA an equitable exception for criminal misconduct. *Guidry,* 110 S.Ct. at 687. The Court said that a general statutory provision, like the one relied on by the lower court to impose the trust,[8] should not override a specific statutory provision, like the anti-alienation provision in ERISA. This case is not analogous to *Guidry.* Here, two specific statutory provisions are in conflict. It is not simply the general purposes behind the Bankruptcy Code that have led courts to conclude that ERISA qualified pension plans are included in the debtor's estate, but specific

statutory mandates. Therefore, the court will not rely on *Guidry,* which is clearly distinguishable, to turn away from a long line of well-reasoned cases.

As the majority of courts· are in agreement that the term "applicable nonbankruptcy law" refers only to traditional state spendthrift trusts and there is no authority in this circuit to the contrary, this court agrees that any trust must comport with the elements of a spendthrift trust for the appropriate state.

*Indiana Spendthrift Trust Law*

■ Indiana recognizes spendthrift trusts both through case law and by statute. The Indiana Code sets out the elements of a spendthrift trust. If the Plan meets the elements of an Indiana spendthrift trust, then it may be excluded from the estate through § 541(c)(2).

The Indiana Code states:

30–4–3–2. Power to restrain transfer of a beneficiary's interest—

(a) The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

(b) Except as otherwise provided in subsection (c), if the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from his interest in the trust estate.

(c) Subsection (a) applies to a trust that meets both of the following requirements, regardless of whether or not the settlor is also a beneficiary of the trust:

7. *See Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488 (11th Cir.1985); *Daniel v. Security Pacific National Bank (In re Daniel),* 771 F.2d 1352 (9th Cir.1985), *cert. denied* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Samore v. Graham (In re Graham),* 726 F.2d 1268 (8th Cir.1984); *Christison v. Slane (In re Silldorff),* 96 B.R. 859 (C.D.Ill.1989); *Gouveia v. Pulley (In re Pulley),* 111 B.R. 715 (Bankr.N.D. Ind.1989); *In re Gifford,* 93 B.R. 636 (Bankr.N. D.Ind.1988); *In re Zabelski,* 81 B.R. 89 (Bankr.

N.D.Fla.1988); *Wear v. Green (In re Green),* 115 B.R. 1001 (Bankr.W.D.Mo.1990). *Contra Anderson v. Raine (In re Moore),* 907 F.2d 1476 (4th Cir.1990).

8. The lower court relied on the general purposes for the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.,* in establishing the constructive trust.

(1) The trust is a qualified trust under 26 U.S.C. 401(a).

(2) The limitations on each beneficiary's control over the beneficiary's interest in the trust complies with 29 U.S.C. 1056(d).

(d) A trust containing terms authorized under subsection (a) may be referred to wherever appropriate as a trust with protective provisions.

Ind.Code § 30–4–3–2 (1989). Subsection (c) aside for a moment, the statute has generally been recognized to require three elements for an enforceable spendthrift trust:

1. The settlor may not be a beneficiary of the trust;

2. The terms of the trust must prohibit the transfer of the beneficiary's interest; and

3. The debtor-beneficiary can have no present dominion or control over the trust assets.

*Gifford,* 93 B.R. at 638. The Debtor in this case is not the settlor and the terms of the trust do prohibit the transfer of the Debtor's interest. The only element left is the third. Therefore, "[t]he key issue is the extent of dominion and control the debtor possesses over the corpus. This issue effectively translates to one word: access." *Miller v. Jones (In re Jones),* 43 B.R. 1002 (Bankr.N.D.Ind.1984). The Trustee argues that this trust fails the access test as the Debtor may receive hardship withdrawals and is entitled to her entire interest in the trust upon termination of employment. The Fiduciaries, on the other hand, argue that this is not impermissible access.

Many courts have found that the ability to voluntarily terminate employment and receive a lump sum payment from the trust is in and of itself impermissible access. *See Christison v. Slane (In re Silldorff),* 96 B.R. 859 (C.D.Ill.1989); *Miller v. Lincoln National Bank and Trust Company (In re Cook),* 43 B.R. 996 (Bankr.N.D.Ind. 1984). *See also Gouveia v. Pulley (In re Pulley),* 111 B.R. 715 (Bankr.N.D.Ind.

1989); *In re McVade,* 72 B.R. 560 (Bankr. N.D.Ind.1987); *In re McIntosh,* 116 B.R. 277 (Bankr.N.D.Ok.1990); *In re Martin,* 115 B.R. 311 (Bankr.D.Utah 1990); *In re Schmitt,* 113 B.R. 1007 (Bankr.W.D.Mo. 1990); *In re Hartman,* 115 B.R. 171 (Bankr.W.D.Ark.1990). Not only does this Plan allow for withdrawal upon termination, but it also provides for hardship withdrawals. This is more access than the court can find authority to allow. It would be inequitable and unfair to creditors to allow the exclusion of the Debtor's interest from the estate as a spendthrift trust and then the day after she receives her discharge enable her to terminate her employment and receive the whole amount or decide to go to school and receive it under the hardship withdrawal provisions.

■ Although the Debtor has access which keeps this trust from being a traditional spendthrift trust under Indiana law, the inquiry is not yet over. Subsection (c) of Ind.Code § 30–4–3–2 added a new element to spendthrift trusts in Indiana. The Fiduciaries urge an interpretation on the court which says that any trust which is qualified under § 401(a) of the IRC and complies with § 1056(d) of ERISA is a spendthrift trust under Indiana law. The Fiduciaries offer *In re LeFeber,* 906 F.2d 330 (7th Cir.1990), in support thereof. The Trustee argues alternatively that the provision should be void pursuant to 29 U.S.C. § 1144(a)[9] or that the court should adopt the interpretation adopted by Judge Robert E. Grant in *In re Gifford, supra.*

In a per curiam decision, the court in *LeFeber* upheld an ERISA qualified pension plan as a spendthrift trust under Indiana law. The Fiduciaries argue that this case is determinative of the outcome in the present case. The court disagrees. While the court in *LeFeber* began by saying that the pension plan at issue there met the requirements of subsection (c) of Ind. Code § 30–4–3–2, it went on to analyze the specific restrictions that had been placed on

**9.** 29 U.S.C. § 1144(a) (1988) states: Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a) ] and not exempt under section 4(b) [29 U.S.C. § 1003(b) ].

the trust. The trust had an "absolute restriction on alienation of ninety percent of the pension benefits [which] is clearly within the terms of § 541(c)(2) [of the Bankruptcy Code]." *LeFeber*, 906 F.2d at 331. The court concluded that this met the requirements of a traditional spendthrift trust. The trust also had a provision allowing for a revocable assignment of 10% of the benefits. The court said that "the restriction preventing an irrevocable assignment would be enforceable under Indiana Law, and therefore § 541(c)(2) makes the same restriction enforceable in bankruptcy. It follows that the estate can get nothing more than a revocable assignment, and a revocable assignment is no better than no assignment at all." *LeFeber*, 906 F.2d at 331. Although the court said that "we are not convinced that the Indiana legislature wished to divide pensions into protected and unprotected portions," the court emphasized the restriction on transfer in excluding it from the estate. *Id.* Furthermore, the court did not stop its analysis when it concluded that the pension plan in question met the requirements of Ind.Code § 30–4–3–2(c), but rather did a traditional access analysis under spendthrift trust law. The court agrees with the Trustee that the Seventh Circuit would not *sub silentio* overrule a significant line of case law. The Seventh Circuit did not adopt the interpretation that the Fiduciaries have urged on this court. Although the trust here meets the requirements of Ind.Code 30–4–3–2(e), *LeFeber* is distinguishable as the court there found that there was not impermissible access, and there is impermissible access here.

Because *LeFeber* is distinguishable and did not specifically address the question regarding the role of Ind.Code § 30–4–3–2(c) in defining spendthrift trusts, that question still exists. As noted above, the Trustee urges the court to void the statute as it conflicts with the preemptive provision in ERISA. The court, however, hesitates to void a statute if any interpretation will render it valid. Such an interpretation was offered by Judge Grant in *In re Gifford, supra.* The court in *Gifford* said:

> Indiana did not and could not have intended to validate all qualified, beneficiary created plans by the amendment, regardless of their terms. Instead, a proper reading of the amendment shows that the state legislature intended to alter only the first requirement of a valid spendthrift trust [the requirement that the trust not be self-settled].

*Gifford*, 93 B.R. at 639. This court agrees with the reasoning in *Gifford*. A close reading of the statute shows that what it means is that a trust which complies with ERISA, qualifies under the IRC, and contains a restriction on transfer pursuant to subsection (a), despite the fact that it may be self-settled, is a spendthrift trust. If all pension plans that qualified under IRC and ERISA were excluded from the reach of the bankruptcy estate, even that part of the Debtor's Plan here which allows her to withdraw without restriction would be a spendthrift trust. This was not the legislature's intended result.

Therefore, this court finds that the part of the Plan in question here needs to pass the access test even with the presence of Ind.Code § 30–4–3–2, but it does not so pass.

## An Appropriate Remedy

■ The Defendants challenge the court's ability to fashion an appropriate remedy. The Fiduciaries argue that if the court orders turnover to the Trustee, not only will the Plan lose its favorable tax status, but the Fiduciaries will also be subject to personal liability. The Trustee sought to alleviate some of this problem by joining the Debtor as a Defendant in this action,[10] so that the Fiduciaries would not have to turn over money directly to the Trustee. The arguments made by the Fiduciaries are not unique and have been rejected by other courts. The court in *In re Pulley, supra,* did an extensive review

---

**10.** That motion was granted. *See Tabor v. Employee Benefits Committee and Trustees of the Lilly Employee Savings Plan (In re Cress),* Case No. TH 89–1441, Adv.Proc. No. 90–8009 (Bankr. N.D.Ind. Nov. 2, 1990).

of this issue, which included reviewing Private Letter Rulings by the IRS.

The court in *Pulley* adopted the reasoning of *Regan v. Ross*, 691 F.2d 81 (2nd Cir.1982) and *Firestone v. Metropolitan Life Insurance Co. (In re Di Piazza)*, 29 B.R. 916 (Bankr.N.D.Ill.1983). Those courts disagreed with the Private Letter Rulings which said that a plan would be disqualified if it turned over funds to a Trustee. They reasoned that since

> the ERISA plans in question do not fall under the exceptions permitted by Section 541(c)(2), the normal anti-alienation requirements of ERISA conflict with Section 541(c)(1)(A) of the Bankruptcy Code.... Consequently, this court holds that to the extent that the provisions of the Bankruptcy Code and ERISA conflict, Section 541(c)(1)(A) implicitly amends the normal anti-alienation provisions of ERISA.

*In re Pulley*, 111 B.R. at 746, quoting *Di Piazza*, 29 B.R. at 922–23. The court so found because ERISA specifically provides that other federal law will not be preempted by ERISA.[11] As the court stated in *Pulley*, "[w]e don't believe, however, Congress intended that the happenstance of' bankruptcy to a minority of plan participants would disqualify those plans." *Pulley*, 111 B.R. at 746.

The Trustee has largely eliminated the question of personal liability of the Fiduciaries by joining the Debtor as a defendant.

> Furthermore, it should be pointed out that in ruling that a debtor's interest in an ERISA-qualified plan is an asset of his bankruptcy estate, a court does not invalidate the anti-alienation provisions of the plan. The Court simply finds that such provision, while effective against a creditor, is not effective against the bankruptcy trustee and does not prevent the interest from being administered in bankruptcy. The distinction noted here is based upon the rights of a Chapter 7 trustee. In addition to exercising the rights available to creditors, 11 U.S.C. § 544(a) and (b), the bankruptcy trustee

succeeds to all rights and assets of the debtor. The issue of whether a debtor's assets could be reached by the creditors is not determinative of whether all such rights and assets are brought into the bankruptcy estate.

*Wear v. Green (In re Green)*, 115 B.R. 1001 (Bankr.W.D.Mo.1990). The Fiduciaries will not be committing a breach of their fiduciary duty if no violation of the anti-alienation provision takes place.

Therefore, based both on common sense and the persuasive reasoning in these cases, the court finds that no bars exist to the fashioning of an appropriate remedy for turnover of funds in the Profit–Sharing Account.

## CONCLUSION

The court finds that that part of the Profit–Sharing Account which is subject to hardship withdrawals is part of the bankruptcy estate; that it is not a spendthrift trust which qualifies for exclusion under 11 U.S.C. § 541(c)(2); and, that no bars exist to the fashioning of an appropriate remedy. Therefore, the Trustee's Motion for Summary Judgment is GRANTED and the Fiduciaries' Motion is DENIED.

The Fiduciaries are ordered to turn over to the Debtor $2,737.86 within 30 days from the date of this Decision. The Debtor is then ordered to immediately turn the funds over to the Trustee for distribution to creditors.

SO ORDERED.

---

11. 29 U.S.C. § 1144(d) (1988) states: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States...."