EMPLOYEE BENEFITS COMMITTEE
and Trustee of the Lilly Employee
Savings Plan

v.

William J. TABOR, Trustee
Sharon Rose Cress.

In re Sharon Rose CRESS, Debtor.

William J. TABOR

v.

EMPLOYEE BENEFITS COMMITTEE
and Trustees of the Lilly Employee
Savings Plan.

No. TH 90–211–C.
Bankruptcy No. TH 89–1441.
Adv. No. 90–8009.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 9, 1991.

John W. Purcell and Cynthia P. Purvis, Baker & Daniels, Indianapolis, Ind., for Employee Benefits Committee and Trustee of the Lilly Employee Sav. Plan.

William J. Tabor, Trustee pro se.

Michael T. Ellis, Terre Haute, Ind., for debtor.

Kenneth C. Meeker, U.S. Trustee, Indianapolis, Ind.

ORDER ON APPEAL FROM DECISION
OF BANKRUPTCY COURT

McKINNEY, District Judge.

*The interpretation of Section 541(c)(2) of the Bankruptcy Code and its application to qualified employee benefit*

*plans has generated considerable litigation and divergent results have been reached by the courts."*

This classic understatement by Judge Altenberger in *In re Sundeen*, 62 B.R. 619, 619 (Bankr.C.D.Ill.1986), sets an appropriate backdrop for today's decision. The issue in this bankruptcy appeal is whether the bankruptcy court erred in holding that a savings plan subject to hardship withdrawals is part of the bankruptcy estate. The Court finds no error in the decision below.[1]

The facts are not in dispute,[2] and are adequately set forth in the bankruptcy court's opinion, 121 B.R. 1006. Briefly, debtor Sharon Rose Cress was an employee of Eli Lilly and Co. ("Lilly"), which sponsored a § 401(k) Savings Plan ("Plan") for its employees. The Plan is qualified under § 401(a) of the Internal Revenue Code of 1986 ("IRC"), 26 U.S.C. § 1 *et seq.,* and is a pension plan within the meaning of § 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

The debtor had a Participant's Account, which was comprised in part of a § 401(k) Profit Sharing Account ("Account"). Funds in this Account could be withdrawn only for "financial hardships," including medical expenses, purchase of a principal residence, tuition for post-secondary education, avoidance of eviction from or foreclosure of a mortgage on a principal residence, and funeral expenses. Employees who have worked for five or more years also may obtain the funds upon termination of employment, whether by voluntary resignation or dismissal. The present action involves the bankruptcy trustee's attempt to obtain the $2,737.86 in Cress' Account subject to hardship withdrawal, pursuant to 11 U.S.C. § 541(a)(1).

Section 541(a)(1) states that except as otherwise provided the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The Bankruptcy Code ("Code") further provides in § 541(c)(1)(A) that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor...." The general rule of § 541(c)(1)(A) is not without exception. This exception, found in § 541(c)(2), provides, "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

The interpretation of "applicable nonbankruptcy law" in § 541(c)(2) is the main dispute in this action. Because the Plan falls within § 3(2) of ERISA and qualifies under § 401(a) of the IRC, it contains the required anti-alienation clause, restricting the transfer of assets.[3] The appellants claim the ERISA-mandated anti-alienation clause fits within the definition of "applicable nonbankruptcy law," and therefore the $2,737.86 in Cress' Account is beyond the trustee's reach.

The bankruptcy court framed the issues as follows:

(1) whether 11 U.S.C. § 541(c)(2) applies only to traditional spendthrift trusts under state law or whether ERISA qualifies as "applicable nonbankruptcy law;"

(2) whether *Ind. Code* § 30–4–3–2(c) includes in its definition of spendthrift trusts any trust within the meaning of § 1002 of 29 U.S.C., qualifying under § 401(a) of the IRC and containing an anti-alienation provision pursuant to § 1056(d) of 29 U.S.C.; and

(3) whether the fiduciary obligations of the defendants and the anti-alienation clause in the plan create a bar to the court fashioning an appropriate remedy for turnover of the funds to the trustee.

These same issues arise on appeal. The bankruptcy court held that § 541(c)(2) only applies to traditional spendthrift trusts,

---

1. Appellants' request for oral argument is denied.

2. *See* Bankruptcy Order at 4; Appellants' Brief at 3.

3. This clause was quoted in full by the bankruptcy court. (Bankruptcy Order at 4).

that ERISA and IRC qualified pension plans are not automatically spendthrift trusts under Indiana law, and that no bar exists to the court fashioning an appropriate remedy for turnover of the funds. (Bankruptcy Order at 5).

Because the underlying facts are not in dispute, the only question is whether the bankruptcy court erred in its application of the law. Conclusions of law made by the bankruptcy court are reviewed *de novo. United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *In re Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). Jurisdiction is proper pursuant to 28 U.S.C. § 158(a).

A. *"Applicable Nonbankruptcy Law" Under § 541(c)(2)*

█ In a thoughtful, 16–page opinion, Judge Dees of the bankruptcy court referenced "a long line of well-reasoned cases" in holding the term "applicable nonbankruptcy law" refers only to traditional state spendthrift trusts. (Bankruptcy Order at 9). Though the Seventh Circuit Court of Appeals has not spoken on this issue, the bankruptcy court's decision is in agreement with the vast majority of cases which have faced this problematic interpretation of § 541(c)(2).

Since the bankruptcy court issued its order, however, the Sixth Circuit decided *In re Lucas*, 924 F.2d 597 (6th Cir.1991), which held the term "applicable nonbankruptcy law" applies to all nonbankruptcy law, state and federal, and therefore includes ERISA. *Accord, In re Idalski*, 123 B.R. 222 (Bankr.E.D.Mich.1991) (also decided after the court below issued its Order).

Thus, the Sixth Circuit's decision in *Lucas* is in agreement with the Fourth Circuit's decision *In re Moore*, 907 F.2d 1476 (4th 1990), and a few district and bankrupt-

cy court opinions in holding the language of § 541(c)(2) includes ERISA. The appellants contend *Lucas* is strong evidence of a new wave of judicial thought in this area. While *Lucas* does not overshadow the substantial body of contrary authority, it nevertheless suggests this Court should carefully scrutinize the issue.[4]

Close inspection reveals that courts actually have interpreted the language of § 541(c)(2) in three ways. As Judge Altenberger observed in *Sundeen*, 62 B.R. at 619–620:

> [A] small number of courts have held that [the words "applicable nonbankruptcy law"] include other nonbankruptcy federal law such as ERISA, and that all ERISA qualified pension plans are therefore excluded from becoming property of the bankruptcy estate. A greater number of courts have rejected this approach, relying upon the legislative history of Section 541(c)(2), which indicates that Congress intended to exclude only traditional spendthrift trusts created under state law. Under this line of cases, the amount of control the debtor has over the pension fund is determinative of whether it qualifies as a spendthrift trust.
>
> Other courts have taken yet a third view, concluding that all qualified pension plans are a part of the bankruptcy estate.

(citations omitted).[5]

The bankruptcy court, noting the absence of relevant Seventh Circuit appellate authority on point, found primary guidance in *In re Goff*, 706 F.2d 574 (5th Cir.1983) (reaffirmed in *In re Brooks*, 844 F.2d 258, 261 (5th Cir.1988). *Goff* follows the majority view (option two set forth in *Sundeen* ) that § 541(c)(2) excludes only traditional state spendthrift trusts, and that each pension trust must be examined to determine

---

**4.** *Lucas* might present the opportunity for the Supreme Court to finally resolve this issue. A petition for certiorari was filed April 15, 1991.

**5.** For ease of reference, the Court will refer to these positions as a "split" in authority, pursu-

ant to which the majority holds § 541(c)(2) was intended to refer only to state spendthrift trust law, and the minority holds that ERISA does constitute "applicable nonbankruptcy law." *Lucas*, 924 F.2d at 600.

whether it qualifies as a spendthrift trust under that state's law.

Specifically, the *Goff* court stated:

Although a given state's nonbankruptcy law of spendthrift trusts might afford protection to a particular pension trust, it is clear in the immediate case that appellant's self-settled trust did not constitute a spendthrift trust entitled to exclusion under relevant state law.

*Id.* at 580. Thus, under *Goff* an ERISA plan may in fact avoid bankruptcy attack provided state spendthrift trust guidelines are followed.

The *Goff* decision was based primarily on three factors: (1) the legislative history of § 541(c)(2); (2) the overall congressional scheme embodied in the Code; and (3) the relationship and effect upon ERISA of the intent of the Code. *Id.* at 581. Citing these factors, the *Goff* court came to the "inexorable conclusion that Section 541(c)(2)'s reference to 'applicable nonbankruptcy law' was an acknowledgement of traditional state spendthrift trust law, and not of ERISA." *Id.*

Other Courts of Appeal following the majority approach set forth in *Goff* are *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982); *In re Graham*, 726 F.2d 1268 (8th Cir. 1984); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); and *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985). Many district and bankruptcy courts have followed in step. *See, e.g., In re Gribben*, 84 B.R. 494 (S.D.Ohio 1988); *In re McIntosh*, 116 B.R. 277 (Bankr.N.D.Okl.1990).

The bankruptcy court noted, but declined to follow, the contrary holding of *In re Moore*, 907 F.2d 1476 (4th Cir.1990). (Bankruptcy Order at 8, n. 7). The *Moore* court held the term "applicable nonbankruptcy law" is not limited to state spendthrift law. *Id.* at 1477. In so doing, the court stated:

'Applicable nonbankruptcy law' means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase 'applicable nonbankruptcy law' or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.

*Id.* In reaching this holding, the *Moore* court also stated that this construction of "applicable nonbankruptcy law" is consistent with the phrase as used in other parts of the Code. *Id.* The court found it inappropriate to refer to the statute's legislative history "because the language of § 541(c)(2) is clear." *Id.* at 1478.[6]

The Sixth Circuit in *Lucas*, 924 F.2d 597, also found reference to the legislative history of § 541(c)(2) inappropriate, and agreed with *Moore* that "applicable nonbankruptcy law" does not refer exclusively to state spendthrift law. *Lucas* at 601. As in *Moore*, the Sixth Circuit reached this decision based upon uses of this phrase in other parts of the Code, and because "other provisions of the Bankruptcy Code demonstrate that when Congress intended to refer to state law, it did so expressly." *Lucas* at 601.

District and bankruptcy court decisions following the minority view of *Lucas* and *Moore* include *Idalski*, 123 B.R. 222; *In re Majul*, 119 B.R. 118 (Bankr.W.D.Texas 1990); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982); *In re Komet*, 104 B.R. 799 (Bankr.W.D.Texas 1989); *In re Mosley*, 42 B.R. 181 (Bankr.D.N.J.1984).

This Court's task is not to simply review conflicting case law, but rather it is to determine whether the bankruptcy court followed the correct line of cases and properly applied the law. Given the absence of directive from the Seventh Circuit Court of Appeals,[7] and that the proper outcome is not self evident, and it would be fanciful for this Court to hold that a particular

---

**6.** The court went on to state, "Even if the legislative history of § 541(c)(2) were relevant, however, it would be inconclusive." *Id.* at 1479.

**7.** In *In re Perkins*, 902 F.2d 1254, 1256 at n. 1 (7th Cir.1990), the Seventh Circuit stated, "The

legislative history of § 541(c)(2) indicates that Congress enacted the provision in order to exempt spendthrift trusts from the debtor's estate."

result is "clear" (though some courts have so held). Though this Court is instructed to give "respectful consideration" to the decisions of other appellate courts, *Colby v. J.C. Penney & Co.*, 811 F.2d 1119, 1123 (7th Cir.1987), this principle provides no guidance given the conflict among the other circuits.

Thus, having reviewed the relevant, conflicting case law and drawing upon this Court's own judgment, the Court finds the bankruptcy court did not err in holding that § 541(c)(2) only applies to traditional spendthrift trusts. This conclusion is reached for several reasons.

The first basis for this conclusion is legislative history of § 541(c)(2). It is proper to consult the legislative history in this cause because the term "applicable nonbankruptcy law" is ambiguous. Even decisions on which the appellants rely have looked to the statute's legislative history for guidance. *See, e.g., Idalski*, 123 B.R. at 229.

The Code's legislative history previously has been dissected by numerous courts, with contrary results. *Cf. Idalski*, 123 B.R. at 230 ("we think it takes a certain *leap of faith* to infer" that Congress meant to exclude federal spendthrift trust law), *with Goff*, 706 F.2d at 582 ("from the legislative history of Section 541(c)(2) *it is clear* that Congress intended" to exempt only state spendthrift trusts) (emphasis added). Though the legislative history is not as "clear" as some courts suggest, it is strong evidence that Congress had state spendthrift trusts in mind when it used the term "applicable nonbankruptcy law."

The House and Senate Reports accompanying the relevant bills make several references to spendthrift trusts, and thus bear out this point. *See* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6325; S.Rep. No. 95–989, 95th Cong., 2d Sess. 83 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5869. In fact, the House Report expressly states the

exclusion of property from the estate exists "to the extent the trust is protected from creditors under *applicable State law." See Goff*, 706 F.2d at 581 (discussing report). Thus, the legislative history supports—though hardly mandates—today's decision.

Second, even if the legislative history of § 541(c)(2) is not considered, it is dubious to presume that Congress intended to include ERISA within the term "applicable nonbankruptcy law" without making specific reference thereto. Yet that is what the appellants ask this Court to hold. Congress could have made express reference to ERISA in § 541(c)(2), but did not.[8] A logical conclusion from such congressional silence is that Congress did not intend to carve this exclusion into the Code, for given the number of qualified ERISA plans such an exclusion would significantly decrease the assets of the bankrupt's estate. This conclusion is further supported by the fact that § 522(d)(10)(E) expressly provides for a partial exemption of ERISA pension plans. *See In re McIntosh*, 116 B.R. 277, 278 (Bankr.N.D.Okl.1990).

The third basis for concluding that § 541(c)(2) applies only to state spendthrift law involves the policy of the Code and the manner in which Code sections are construed. Section 541(a) is an "inclusion" provision, and thus is construed broadly. 4 *Collier on Bankruptcy* 541–26 (1991). Doing so allows the trustee to bring all property of the debtor into the estate for payment of creditors, and "[t]he policy of enlarging the bankruptcy estate to the maximum extent allowable under the Code is of paramount importance...." *In re Swanson*, 873 F.2d 1121, 1124 (8th Cir.1989).

In contrast, § 541(c)(2) is an "exclusion" provision. As such it is narrowly construed. *In re Gifford*, 93 B.R. 636, 638 (Bankr.N.D.Ind.1988); *In re Cook*, 43 B.R. 996, 999 (N.D.Ind.1984). Limiting "applicable nonbankruptcy law" to state spendthrift law effects a narrow construction of § 541(c)(2), construes § 541(a) broadly, and

---

**8.** Moreover, Congress has declined the opportunity to amend § 541(c)(2) to clarify this point, despite divergent opinions regarding this statute

by the courts, the majority of which have found ERISA plans within the bankruptcy trustee's reach.

carries out the Code policy of marshaling the debtor's assets for the benefit of creditors. Section 541(c)(2) "is the only express exception to the general rule of section 541(c)(1) which generally invalidates restrictions on the transfer of property." 4 *Collier on Bankruptcy* 541–113 (1991).

Fourth, while the Seventh Circuit Court of Appeals has not decided this issue, the trustee asserts that "[e]very court in the Seventh Circuit that has addressed these issues has followed the majority opinion." *See Morter v. Farm Credit Services,* 110 B.R. 390 (N.D.Ind.1990); *In re Pulley,* 111 B.R. 715 (Bankr.N.D.Ind.1989); *In re Gifford,* 93 B.R. 636 (Bankr.N.D.Ind.1988); *In re McVade,* 72 B.R. 560 (Bankr.N.D.Ind. 1987); *In re Cook,* 43 B.R. 996 (N.D.Ind. 1984); *In re Jones,* 43 B.R. 1002 (N.D.Ind. 1984); *In re Berndt,* 34 B.R. 515 (Bankr.N. D.Ind.1983); *In re DiPiazza,* 29 B.R. 916 (Bankr.N.D.Ill.1983); *In re Goldberg,* 98 B.R. 353 (Bankr.N.D.Ill.1989); *In re Silldorf,* 96 B.R. 859, 862–63 (C.D.Ill.1989); *In re Hohl,* 81 B.R. 450 (Bankr.N.D.Ill.1987); *In re Dagnall,* 78 B.R. 531 (Bankr.C.D.Ill. 1987); *In re Sundeen,* 62 B.R. 619 (Bankr. C.D.Ill.1986).

The appellants ask this Court not to be "seduced by mere quantity of authority." (Appellants' Reply at 2). Seduction aside, the Court will not ignore these holdings. While of course not determinative of today's outcome, *Colby,* 811 F.2d at 1124 (such decisions normally entitled to "no more weight than their intrinsic persuasiveness merits"), these decisions nevertheless are a useful measure of judicial thought in this circuit. That every court in this circuit that has considered the issue has sided with the trustee is not a fact easily dismissed. More important, the logic of these cases is persuasive.

Finally, the foundation for today's decision is not limited to legislative history,

statutory construction, or judicial precedent. Another factor, no less important than the others, is that the majority approach embraced in the bankruptcy court's decision is sound. The bankruptcy court did not lay down an inflexible rule that a qualified ERISA pension plan is always subject to attack by the bankruptcy trustee. On the contrary, an ERISA plan may escape the reach of bankruptcy creditors provided the plan satisfies the requirements of state spendthrift law. Plans thus may be structured so that they will not become property of the estate.

If plans are not structured to qualify as a spendthrift trust, they may be subject to the bankruptcy trustee's reach, and rightly so. To the extent the debtor has excessive access to the funds, thus undermining ERISA's policy of preserving retirement benefits, creditors should likewise enjoy the same access. Accordingly, the bankruptcy court did not err in holding that § 541(c)(2) only applies to traditional spendthrift trusts.[9]

### B. *Indiana Spendthrift Law*

■ The bankruptcy court next concluded that the debtor's Account was not a spendthrift trust under Indiana law because of the access the debtor had to the funds. This Court agrees.

■ The elements of an Indiana spendthrift trust are set forth in *Ind.Code* § 30–4–3–2. In general, the statute requires three elements for an enforceable spendthrift trust:

(1) the settlor may not be a beneficiary of the trust;

(2) the terms of the trust must prohibit the transfer of the beneficiary's interest; and

(3) the debtor-beneficiary can have no present dominion or control over the trust assets.

---

**9.** This Court also agrees with the bankruptcy court's conclusion that the Supreme Court's decision in *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), does not foreclose today's holding. In *Guidry,* the Supreme Court reversed a decision imposing a constructive trust on an ERISA pension plan following Mr. Guidry's guilty plea to embezzling funds from the Union. The Supreme Court refused to read an equitable exception into ERISA for criminal misconduct. The issue in the case at bar is not whether to impose an equitable exception to ERISA, but rather how to resolve a conflict between ERISA and the Code. Accordingly, *Guidry* is not controlling.

*Gifford*, 93 B.R. at 638. The appellants' argument focuses on the third element, namely, that Judge Dees erred in concluding that the debtor had impermissible control over the trust assets.

As set forth previously, the debtor could make withdrawals from her Account only for "financial hardships." This term includes medical expenses, purchase of a principal residence, tuition for post-secondary education, avoidance of eviction from or foreclosure of a mortgage on a principal residence, and funeral expenses. In addition, employees who worked for Lilly for five or more years could obtain the funds upon termination of employment, whether by voluntary resignation or dismissal.

In concluding the debtor had impermissible access, Judge Dees wrote:

> Not only does this Plan allow for withdrawal upon termination, but it also provides for hardship withdrawals. This is more access than the court can find authority to allow. It would be inequitable and unfair to creditors to allow the exclusion of the Debtor's interest from the estate as a spendthrift trust and then the day after she receives her discharge enable her to terminate her employment and receive the whole amount or decide to go to school and receive it under the hardship withdrawal provisions.

(Bankruptcy Order at 11).

This Court is in agreement. Such a plan "functions more like a savings program than a spendthrift trust." *Cook*, 43 B.R. at 1001. Accordingly, the Account fails to qualify as a spendthrift trust because the debtor-beneficiary has too much control over the trust assets. *Gifford*, 93 B.R. at 638.

The appellants assert this conclusion runs contrary to the Seventh Circuit's decision in *In re LeFeber*, 906 F.2d 330 (7th Cir.1990). In *LeFeber*, the debtor had a $1,000-a-month, ERISA-qualified pension, the limitations on which forbid the debtor to make any assignment of benefits except that he could make a revocable assignment of 10 percent of his benefits. The trustee sought an order from the bankruptcy court requiring the debtor to turn over to the estate the right to receive the 10 percent of the fund the debtor had the power to temporarily assign. The bankruptcy court refused, and the district court affirmed. On appeal, the Seventh Circuit affirmed in a two-page, per curiam order.

The appellants argue that "the Seventh Circuit effectively held that the key issue is not the 'access' emphasized by the Bankruptcy Code in pre-*LeFeber* cases [but instead] the key issue in this Circuit today is whether a pension plan complies with ERISA and the IRC." (Appellant's Brief at 18).

This argument can be traced to a 1987 amendment to Indiana's trust code. The legislature amended *Ind. Code* § 30-4-3-2, adding subsection (c) and the references to it, as follows:

> Subsection (a) applies to a trust that meets both of the following requirements, regardless of whether or not the settlor is also a beneficiary of the trust:
> (1) The trust is a qualified trust under 26 U.S.C. 401(a);
> (2) The limitations on each beneficiary's control over the beneficiary's interest in the trust complies with 29 U.S.C. 1056(d).

*Ind. Code* § 30-4-3-2(c).

Thus, it is the appellants' contention that based on *Ind. Code* § 30-4-3-2(c), if a plan complies with ERISA and the IRC, it automatically qualifies as a spendthrift trust and therefore is beyond the reach of the bankruptcy trustee.

The Court rejects this position for several reasons. First, such an interpretation of *LeFeber* is too broad. The bankruptcy court, recognizing the fallacy of the appellants' interpretation, observed, "If all pension plans that qualified under IRC and ERISA were excluded from the reach of the bankruptcy estate, even that part of the Debtor's Plan here which allows her to withdraw without restriction would be a spendthrift trust. This was not the legislature's intended result." (Bankruptcy Order at 13).

The bankruptcy court offered a more plausible suggestion as to the effect of § 30-4-3-2(c). The court stated a "close reading of the statute" shows, "[A] trust

which complies with ERISA, qualifies under the IRC, and contains a restriction on transfer pursuant to subsection (a), despite the fact that it may be self settled, is a spendthrift trust." (Bankruptcy Order at 13). *See also Gifford*, 93 B.R. at 639 ("Indiana did not and could not have intended to validate all qualified, beneficiary created plans by the amendment, regardless of their terms").

In addition, the trust in *LeFeber* is distinguishable in at least two significant ways. First, the trust had an "absolute restriction on alienation of ninety percent of the pension benefits." *Id.* at 331. Second, as to the remaining 10 percent, the trust provided only for a "revocable assignment." *Id.* On this point, the appellate court stated, "It follows that the estate can get nothing more than a revocable assignment, and a revocable assignment is no better than no assignment at all." *Id.*

This contrasts sharply to the Plan in the case at bar, which provides that the debtor may make withdrawals for various "hardships," and is entitled to the assets even if fired from her position, provided she has been employed at least five years.

Finally, it is highly doubtful that the Seventh Circuit would have *sub silentio* overruled Indiana's access test in a two-page per curiam order. Thus, use of the access test to determine whether a plan qualifies as an Indiana spendthrift trust remains appropriate even after *LeFeber.* For the reasons set forth, the Plan at bar does not so qualify.[10]

## C. *Fashioning a Remedy*

■ The final issue this Court must address is whether the bankruptcy court erred in holding that no bar exists to fashioning an appropriate remedy for turnover

of the funds. Essentially, the appellants argue that if Plan assets are ordered turned over the Plan will lose its tax-exempt status and the Plan fiduciaries could be held personally liable.

Some courts have agreed with the appellants and held that enforcing ERISA's anti-alienation provisions against the bankruptcy trustee is proper because the result prevents the plan from being subjected to disqualification and loss of tax-exempt status. *See Lucas*, 924 F.2d at 603 (preventing disqualification and loss of tax exempt status is a "favorable" result); *Majul*, 119 B.R. at 123 (result avoids detriment to "innocent pension beneficiaries").

As expected, other courts considering this complex issue have rejected such arguments. *See Gifford*, 93 B.R. at 640–41 ("tax penalties are insufficient to negate the revocable nature of this trust."); *In re Masters*, 73 B.R. 796 (Bankr.D.Or.1987) (pension plan trustees required to turn over sums in debtors deferred income account despite possibility of tax disqualification).

This Court finds that the potential fiduciary liability and loss of tax-exempt status are insufficient to shift the balance in the appellants' favor. The appellants' argument is based primarily upon Private Letter Rulings of the Internal Revenue Service. (Appellants' Brief at 22). As the bankruptcy court noted, these rulings have not been received favorably by the courts. *See Pulley*, 111 B.R. at 746; *Regan*, 691 F.2d at 87;[11] *DiPiazza*, 29 B.R. at 922–23. Thus, the appellants' argument is speculative.

Moreover, the bankruptcy court has attempted to address the fiduciaries' concern regarding personal liability by recognizing that the trustee has joined the debtor as a

---

**10.** The trustee argues that *Ind.Code* § 30–4–3–2(c) is preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a), and therefore invalid and unenforceable. *See, e.g., Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). The bankruptcy court did not directly address this issue, holding instead that the interpretation in *Gifford* was a viable alternative to invalidating the statute. In agreeing with the bankruptcy court's interpretation of

the statute, this Court need not decide whether ERISA preempts § 30–4–3–2(c). However, the preemption argument is compelling. *See Gifford*, 93 B.R. at 639 n. 2.

**11.** A statement in *Regan* bears repeating, for it mirrors the appellants' position at bar. "We sympathize with the [appellants'] apparent plight; poised between the Scylla of tax disqualification and the Charybdis of bankruptcy court contempt, they seek only a safe passage through this statutory strait." *Id.* at 87.

defendant, and issuing an order requiring turnover of Plan assets to the debtor rather than directly to the trustee.[12] (Bankruptcy Order at 15). In any event, to the extent fiduciary liability remains a concern, it should be remembered that no turnover of assets would have been required had the Plan satisfied state spendthrift law requirements.

### D. *Conclusion*

Though *Goff* and the majority approach it conceived have come under attack, the reasoning of these cases survives. *Goff* recognized the dichotomy of allowing a debtor the freedom to withdraw plan assets, while shielding these assets from creditors. That court observed, "Debtors could shelter funds ... in plans immediately before declaring bankruptcy ... and immediately after discharge of all debts withdraw such funds for their own benefit." *Goff,* 706 F.2d at 588.

Today's decision avoids this dichotomous result by upholding a significant, yet sound limitation on a debtor's ability to protect trust funds from creditors: the protection is unavailable unless the fund meets the requirements of state spendthrift law. This result not only is sound, it also is supported by legislative history, principles of statutory construction, and judicial precedent.

The potential tax consequences and other results feared by the appellants do not command a different outcome. Compliance with state spendthrift requirements will prevent these consequences. In this case, however, the appellants have allowed the debtor too much access to her funds, and therefore have failed to meet these requirements.

Accordingly, for the foregoing reasons the decision of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.

---

**12.** The bankruptcy court ordered the fiduciaries to turn the $2,737.86 over to the debtor, and then ordered the debtor to immediately turn the funds over to the trustee for distribution to creditors.